REGAN, Judge.
Plaintiff, John A. Schernbeck, a salesman, instituted this suit against the defendants, L. V. Martenson, doing business as. E. and M. Brokerage Company, by whom he was employed at a salary of $105 per' week, and which company acted as the-manufacturer’s agent for Ernest E. Reich,, doing business as Delta Chemical Laboratory and New England Fish Company, Ltd.,, also made defendants, endeavoring to re *849 cover workmen’s compensation at the rate of $30 per week for a period of four hundred weeks and $1,000 for medical expenses, for total permanent disability as a result of a left leg injury which he incurred on August 14, 1953, when he walked into a “dolly” located in the aisle of an unlighted warehouse, and bumped both shins, which threw him forward causing the injury complained of.
The defendants pleaded various exceptions which were referred to the merits. Defendant Martenson then answered and denied that an accident occurred or, if it did occur, plaintiff incurred no compensable disability as a result thereof; he also denied that an employer-employee relationship existed between plaintiff and himself and insisted, despite the fact that plaintiff was hired and his salary paid by him, that he was an agent or employee and not an independent contractor of the principals, New England Fish Company and P'elta Chemical Laboratory; and, finally, that plaintiff was an employee of the principals within the legal scope of the Workmen’s Compensation Act.
Defendants, New England Fish Company and Delta Chemical Laboratory answered and, in substance, denied that an accident occurred or, if it did occur, plaintiff suffered no compensable disability as a result thereof. They further denied that plaintiff was an employee of theirs or that Martenson was their agent or employee. On the other hand, they insist that plaintiff was an employee of Martenson and they, therefore, called Martenson in warranty in the event that the court should reach the conclusion that LSA-R.S. 23:1061 is applicable, they would be entitled to indemnity from Mar-tenson.
There was judgment awarding plaintiff compensation at the rate of $30 per week beginning August 14, 1953,. not to exceed four hundred weeks, against the defendants, in solido. The .judgment further provided that compensation allowed the plaintiff shall not be collectible for the period of time that he received wages from Martenson equal to or exceeding the amount of the compensation. There was also judgment in favor of plaintiff and against the defendants, in solido, in the sum of $1,000 for medical .expenses. Finally,, the judgment ordered that the fees of Drs. Rabin and Usdin, as expert witnesses, be fixed at the sum of $100 each. From this judgment all three defendants have appealed.
The record reflects that L. V. Martenson, doing business as the E. and M. Brokerage Company, is engaged in the brokerage business in New Orleans, representing nine manufacturers, two of whom were New England Fish Company and Delta Chemical Laboratory. Martenson employed.the plain'tiff as a salesman at a salary of $105 per week, plus an automobile allowance. Plaintiff contends that he sustained an injury to his left leg on August 14, 1953, while acting in the course of his employment. He related that while walking in an aisle of the unlighted warehouse of the Venice Gardens for the purpose of checking the stock of the New England Fish Company and Delta Chemical Laboratory, he bumped into a, “dolly”, which caused him to strike the shin of both legs, but particularly his left leg three inches' below the knee.
‘ James E. Duggan, ah employee of'Venice Gardens, who' accompanied plaintiff into the warehouse, related that he saw plaintiff bump into the dolly and heard him exclaim “ouch” and say that he had hit hi's shin; that immediately thereafter they mutually began checking the stock of the aforementioned companies.
Plaintiff asserted that he did not consult a doctor until about one month later ■ when, after much uncertainty and experimentation, it was finally discovered that he had developed a periosteal hematoma, which required operative intervention on November 13, 1953, and, as a result thereof, the perineal nerve was either damaged or interfered with “causing a foot drop.”'
The defendants insist that the plaintiff has utterly failed to establish, other than by his own testimony, that the ultimate injury of which he now complains occurred as a result of a bump on his left shin three inches below the knee.
*850 The initial question which the pleadings and the evidence has posed for our consideration is one of fact and that is whether the accident, which is alleged by plaintiff to have occurred on August 14, 1953, caused the periosteal hematoma ?
Excluding the testimony of Dr. Gene Usdin, who was produced by plaintiff merely to negate the possibility that plaintiff’s injury was caused by one or more of seven shock treatments which were administered to the plaintiff during March of 1953, only two doctors testified as to the specific cause and nature of plaintiff’s injury, Dr. Herman Rabin, the surgeon who operated upon plaintiff testified in his behalf, and Dr. Irvin Cahen, an orthopedic surgeon, testified as an expert on behalf of defendants.
Both Drs. Rabin and Cahen placed the site of the periosteal hematoma on the lateral and posterior or left rear side of plaintiff’s left leg.
It is clear from both the allegations of the petition and from plaintiff’s testimony that he was walking forward when he bumped into a “dolly” in the aisle of the unlighted warehouse. A periosteal hema-toma is a deep injury to the outer layer of the bone and can only, excluding "a general metabolic condition”, be caused by a direct trauma. This is extremely important as the periosteal hematoma, which plaintiff contends was the result of the accident of August 14, 1953, was, according to the medical experts, on the posterior or rear side of the fibula, whereas, it is .conceded by plaintiff that the bump which he suffered in the warehouse of Venice Gardens, was to the front or shin of his left leg, three inches below the knee.
Dr. Rabin, in briefly relating the pertinent portions of plaintiff’s medical history, testified that he had been treating him for a period of Several years with reference to a back injury and when he was consulted by plaintiff about a month after the accident, he made no mention to him about having received a bump on the shin of his left leg and he, at that time, thought there was some causal connection between plaintiff’s back injury and his left leg. In fact, plaintiff, of his own volition, never mentioned or suggested the bump which he had received to the shin of his left leg and this fact was literally extracted by Dr. Rabin by the tedious process of elimination as excerpts from the testimony of Dr. Rabin will reveal :
“Q. Did I understand your testimony that all of your troubles in reaching a diagnosis of Mr Schernbeck’s condition was because he had never mentioned any incident involving trauma, is that correct? A. We never took an x-ray.
“Q. Did I understand your testimony that you first saw him on or about September 14, 1953? A. Yes, sir.
“Q. And then you took your x-ray in the latter part of October, 1953 ? A. Almost five weeks later. We were looking for an answer. I mean, I didn’t know the answer.
“Q. So that sometime in October or about October 23, 1953, was the first time that Mr. Schernbeck mentioned the incident of the trauma to you, is that correct ? A. Let me explain how that was brought about. I think it is only fair. The trauma was brought out by the fact that he was not getting any better. We had done the sympathetic block which isn’t a very easy procedure. We had given him the so-called vasul dilator. He had been treated for neuritis with large doses of vitamin BD, with thiamin hydrochloride, and with all those facts we were at a loss. We did not know the diagnosis.
“By The Court:
“Q. Up to that time he had not told you about the trauma ? A. He had not in his mind attached any of this to trauma, and then it was brought out would it be possible that a lick would have had something to do with this, you see. Wait a minute. No, it was brought out by his wife or himself who said ‘don’t you think we ought to *851 get an x-ray of his leg.’ We have our own x-ray equipment. I said ‘okay, I think you are wasting your money.’ I did not know the diagnosis. We got the x-ray of the leg and saw a lesion at the upper end of the fibula.
“Q. When did he first tell you he had a trauma? A. After I told him there was something wrong with the bone.
“Q. After the x-ray was taken ? A. After the x-ray was taken.
“Q. And the x-ray was taken October 23? A. Or the 22nd. Here are the x-rays.
“Q. I believe you reported on November 25 that on October 23, 1953 an x-ray of the left leg revealed an area of periosteal reaction? A. Yes. Then I asked him had he had any trauma * * * i)
We related hereinabove that a periosteal hematoma is a deep injury to the outer layer of the bone and can only (excluding “a general metabolic condition”) be caused by a direct trauma. In view of the medical testimony hereinafter quoted the foregoing statement assumes emphatic significance. The periosteal hematoma which plaintiff insists was the result of the accident, is located on the posterior or rear side of the fibula, whereas plaintiff concedes that the bump which he suffered was to the front or shin of his left leg, three inches below the knee. In this connection plaintiff’s physician, Dr. Rabin, very pertinently elucidated thereupon as follows:
“Q. Well, Doctor, if this injury was caused by a trauma, where, in your opinion, would the site of the trauma have occurred ? A. The trauma should occur directly over the area of the injury.
******
“Q. Is it possible or is it your opinion that it was caused by a trauma or blow directed from the very front of Mr. Schernbeck’s leg? A. No.”
Dr. Cahen substantiated Dr. Rabin’s foregoing conclusion, by virtue of the following testimony:
“Q. Would you feel that a trauma to the inside area of Mr. Schernbeck’s leg would either precipitate or aggravate the area of this present peritoneal involvement? A. No, sir.
“Q. Do you feel that a trauma to or from the front of Mr. Schernbeck’s left leg would either precipitate or aggravate the present peritoneal involvement? A. No, sir.
******
“Q. Tell me something, if I was walking along and I struck my left leg, say from the knee on down, from the front just as I was walking into an object, would a blow of that kind produce a lesion over the place you have indicated on my leg? A. No, in my opinion.”
In addition to the foregoing convincing testimony to the effect that the periosteal hematoma was not the result of the blow to plaintiff’s shin, there is evidence in the record that plaintiff had received a series of seven electric shock treatments in March, 1953. These treatments are described as producing violent convulsions similar to a “grande mal of epilepsy.” Dr. Cahen related that he had treated many patients for fractures of the spine and long bones of the body caused by these treatments; that he had also observed many cases of perios-teal hematoma following these treatments and that a period of nine months could elapse before the condition developed to a point where operative intervention was indicated.
Dr. Usdin, who administered the electric shock treatments, related that the only fractures he had seen resulting therefrom were in the spine and probably the thoracic region of the back; he had not seen any long bone fractures, but admitted, under cross-examination, that he had seen conditions produced by electric shock treatments which could cause a periosteal hemotoma.
*852 The legal philosophy which has permeated our jurisprudence with liberal rules of evidence and procedure applicable to compensation cases does not apply to proof that the accident caused the disability. Plaintiff must, therefore, establish his case by a preponderance of competent evidence as in any other civil suit.
In several relatively recent opinions of this court we have had occasion to remark that whenever the experts are in substantial disagreement, they are of little aid of the court, and therefore, we must decide the case on the record as a whole, however, it is rare indeed where the record reveals agreement between the medical experts appearing on behalf of plaintiff and defendant as is evidenced by the foregoing testimony. We do not intend to convey the impression that some conflict did not exist in the medical testimony, for this is to be expected because of the very nature of medicine as an inexact science, but the answers given by the medical experts in response to pertinent questions directly bearing upon the issue involved were in accord.
We are of the opinion that the accident which plaintiff is alleged to have suffered on August 14, 1953, produced no compensable disability as a result thereof, therefore, it is Unnecessary that we consider the other interesting defenses urged by the various defendants.
For .the reasons assigned the judgment appealed from is annulled, avoided- and reversed and it is now ordered that there be judgment herein in favor of defendants dismissing plaintiff’s suit at his cost.
Judgment reversed.