111 So.2d 387 (1959)
Issac ROWAN
v.
TRAVELERS INSURANCE COMPANY.
No. 21303.
Court of Appeal of Louisiana, Orleans.
April 13, 1959.
Rehearing Denied May 11, 1959.
*388 Frank S. Bruno, New Orleans, for plaintiff and appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, E. A. Carrere, Jr., New Orleans, for defendant and appellee.
REGAN, Judge.
Plaintiff, Issac Rowan, a common laborer, instituted this suit against the defendant, The Travelers Insurance Company, his employer's[1] compensation insurer, endeavoring to recover the sum of $30 per week for a period of 368 weeks, plus attorney's fees and penalties, for total and permanent disability resulting from injuries[2] incurred when an explosion and fire occurred in a pipe in which he was working on April 25, 1956.
Defendant answered and admitted the occurrence of the accident and the payment of compensation for 32 weeks and of medical expenses, but asserted that the plaintiff has fully recovered from the injuries, is able to perform all of the duties of his former employment, and therefore is not entitled to any further compensation.
From a judgment in favor of defendant dismissing plaintiff's suit, he has prosecuted this appeal.
The trial judge made a thorough analysis of this case in his written reasons for judgment, which in our opinion fully encompass the subject posed for our consideration and the result which we have agreed should be reached:
"Plaintiff, a common laborer, seeks to recover Workmen's Compensation of Thirty and no/100 ($30.00) Dollars per week for 400 weeks, subject to a credit of $960.00 plus medical expenses, subject to a credit of $354.68.
"Plaintiff alleges he is totally and permanently disabled, but does not disclose the nature of his alleged injuries, but at the trial sought to prove a case of post-traumatic mental disturbance.
"The accident occurred on the 25th of April, 1956, when a large pipe, in which plaintiff was working, exploded.
"Defendant denies that plaintiff suffers from any disability and avers that he is now able to perform all duties of his former employment, and has been so able since November 7, 1956.
"The record is clear that plaintiff is not disabled, but, to the contrary, is well able to carry on all of the duties of a common laborer.
"On November 7, 1956, Dr. C. S. Holbrook recommended that the plaintiff returned to work.[3]
"In October of 1956, Charity Hospital released the plaintiff and suggested that he return to employment.[4]

*389 "Plaintiff's lay witnesses, consisting of his wife, his brother and Louise Blanchard, a close friend, who have never been on the job with plaintiff, sought to prove that plaintiff was only able to do light, menial chores.[5]
"Emile Prattini, a labor supervisor for Donnelly Construction Company and its companion company Progressive Rentals, testified for plaintiff. Under cross-examination, Prattini admitted to an investigator for defendant, a few days before the trial, that `plaintiff was one of his best laborers before he got mixed up with a lawyer and got the idea of insurance in his head.' He admitted plaintiff was paid $1.50 per hour, which was the highest pay scale for common labor.
"The Court is not impressed with Prattini's effort to indicate that plaintiff was only doing light work.
"Mr. Donnelly testified, affirmatively, as secretary-treasurer of the two companies, that he made all payroll payments and actually spot-checked the employees on the job, to be sure that they were giving an honest day's work for a day's pay. He stated that plaintiff was a satisfactory worker doing laboring work and was paid the highest pay for common labor.
"On the medical side, Dr. Randolph Page, a neurologist, testified that he saw plaintiff on June 6, 1956. His neurological examination was negative. He recommended that plaintiff be examined by a psychiatrist, and that his professed inability to eat be explored. The Charity Hospital report of even[6] date shows plaintiff was eating very well.
"Dr. Lancaster a psychiatrist, saw plaintiff on August 29, 1956, and again briefly, on December 21, 1956. Under cross-examination, it was obvious that Dr. Lancaster made no test on plaintiff and that his statement, to the effect that plaintiff needed psychiatric help, was based solely on his naked belief of what plaintiff told him. He had no notes, other than one-half page of notes in his handwriting, consisting of approximately six lines.
"Dr. Head, psychiatrist, who succeeded to Dr. Holbrook's practice, testified that plaintiff was incapable of resuming his place in normal society because plaintiff told him that people were following him, and talking about him. Doctor Head made no tests, and no examinations to determine the actual condition of plaintiff. He merely accepted plaintiff's word that people were following and talking about him.
"Both of these doctors were asked to produce their entire records, which, in each case, consisted of only a few notes on a single page.
"Neither of these doctors had the opportunity to view the motion pictures of plaintiff working, and neither had the advantage of the investigation or check on plaintiff.
"The motion pictures taken of plaintiff on laboring jobs of the abovementioned companies, covering an extensive period, beginning with April 29, 1957, show that plaintiff not only is *390 able to perform hard laboring work, but that, actually, he is quite athletic in his pursuit of such work.
"The pictures cover a variety of activities on his part. He is shown riding in the air on a scoop of a drag line, perfectly at ease, with a cigarette in his mouth. Other pictures show him carrying heavy planking and steel rods; and assisting in the digging of ditches. Actions speak louder than words.
"It is obvious that plaintiff is well able to resume his place in society and well able to perform heavy labor.
"The law in compensation cases is that plaintiff must prove his case by a preponderance of the evidence. This, he has failed to do.
"The evidence given by Drs. Head and Lancaster is inconclusive and not based upon medical tests and procedures. Such evidence is merely opinion evidence, based solely upon their naked belief of what plaintiff told them.
"These assumptions, as the Court stated in the case of Etienne v. Algernon Blair, Inc., [La.App.] 100 So.2d 533, are not in accordance with the true facts, as disclosed by the credible evidence, and should be disregarded, under the authority of Mouton v. Gulf States Utilities Company, [La.App.] 69 So.2d 147, 151, wherein the Court said:
"`The record does not disclose, in the least bit, that the alleged fuse explosion was of such a nature as related to Dr. Butterworth by petitioner. Aside from any objection by defendant to the testimony of Dr. Butterworth, we believe that the story of the incidents given him by petitioner were exaggerated to such an absurd extent as to render the value of Dr. Butterworth's testimony absolutely nil. Dr. Butterworth's testimony was based on two question and answer periods of about 45 minutes duration each, held in his office. His findings were based on the incidents as related to him by petitioner.
"`This case is very similar to Phelps v. Royal Indemnity Company (La. App.) 77 So.2d 225, decided by me and affirmed on appeal. In that case plaintiff sought to prove he had a herniated disc and, being unable to do so, amended his complaint to allege post-traumatic neurosis. The Court of Appeal quoted my findings in part. viz.:
"`"Regarding a supplemental defense of post-traumatic neurosis, there is no basis for this defense, which impresses me as nothing more than a lastminute afterthought."
"`Certainly, the evidence in this case, and particularly the motion pictures, prove that plaintiff can work, has worked, and will work as soon as this case is decided. * * *'
"Since plaintiff has been paid full compensation and medical bills until he was able, and did return, to work, there will be judgment for defendant dismissing plaintiff's suit at his cost."
The foregoing opinion of the trial judge reveals that in substance only a question of fact was involvedthat is, whether plaintiff was fully capable of resuming his former occupation, and he resolved this question in favor of the defendant. Therefore, this is obviously a case which permits of the application of the accepted doctrine that the conclusions of the trial judge will not be disturbed or reversed when questions of fact are exclusively encompassed by the judgment unless clearly erroneous.
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] Boh Brothers Construction Company.
[2] The petition did not disclose any physical injuries, but on the trial hereof plaintiff endeavored to prove that he was "suffering from the aftereffects of a cerebral concussion and from a paranoid psychosis."
[3] He also stated "it would be my idea that he go to work within the next ten days, but not the work that he was doing at the time of the accident. After he has worked for a while, then, if he wants to, he could go back to the specialized work." The motion pictures which were shown to us during the course of the hearing of the case on appeal reflected that the plaintiff had resumed the specialized laboring work which he had performed prior to the accident.
[4] The Charity Hospital's progress note form dated October 23, 1956, reads: "Discharge Note: * * * Rowan's recovery from an acute schizophrenic reaction precipitated by an explosion has been gradual and complete. Amytal, intervenus were successfully therapeutic. Excellent (illegible word). Will be followed in the clinic." (Sg.) Rafferty, M. D. The Charity Hospital outpatient form dated February 28, 1957, stated in part: "Has not yet returned to work. Urged to do so." And the form dated December 10, 1957, in conclusion, reads: "Return to clinic at own needno further appt."
[5] In addition thereto they testified in substance that plaintiff's personality had undergone a radical change since the occurrence of the accident.
[6] We are sure that the word "even" was intended by the trial court to be "every," since an examination of the Charity Hospital reports shows that plaintiff was confined for 46 days and that he ate all meals he was served except on three occasions when he ate lightly.