128 So.2d 318 (1961)
Johnnie PHILLIPS
v.
UNDERWRITERS AT LLOYD'S OF LONDON et al.
No. 5137.
Court of Appeal of Louisiana, First Circuit.
March 6, 1961.
Rehearing Denied April 10, 1961.
Certiorari Denied May 12, 1961.
*319 L. Barbee Ponder, Jr., Amite, for appellant.
Kennon, White & Odom, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, JONES, HERGET and LANDRY, JJ.
LANDRY, Judge.
Plaintiff, Johnnie Phillips, herein appeals an adverse judgment of the trial court rejecting in toto his demands for maximum workmen's compensation benefits for alleged total permanent disability and for penalties and attorney's fees for defendant's asserted arbitrary failure to pay either compensation in the correct amount due or in any amount whatsoever.
The occurrence of the accident and injury within the scope and during the course of plaintiff's employment by defendant Reimers-Schneider Company, Inc., (insured of defendant Underwriters at Lloyd's of London) is conceded, the dispute between the litigants being limited solely to the issue of the nature, extent and duration of plaintiff's disability resulting therefrom.
While in the employ of the aforementioned defendant, plaintiff a 43 year old negro laborer, was injured on July 29, 1958, when a 2 × 6 inch timber, 20 feet in length (which plaintiff and a fellow worker were moving with the aid of a chain hoist) fell from a height of about 2½ to 3 feet striking plaintiff in the vicinity of his left instep.
Plaintiff maintains the accident aggravated a pre-existing arthritic condition in his left knee making it impossible for him to work without pain thereby rendering him totally and permanently disabled from performing manual labor and, alternatively, that he is totally and permanently disabled because the injury received has caused him to suffer a conversion reaction and hysteria with post-traumatic neurosis to such degree he is no longer able to indulge in hard physical work.
Although the gravamen of plaintiff's complaint is predicated upon alleged injury to his left knee the only evidence of injury to said bodily member is the unsupported testimony of plaintiff himself.
Hosea Lee Blevins, a co-worker assisting plaintiff at the time of the accident, testified, in substance, that upon the occurrence *320 of the incident plaintiff made no complaint respecting; his knee but only his foot. Another fellow employee, Thomas McDonald, who was standing near plaintiff at the time of the accident corroborated Blevins' testimony in that he too testified plaintiff did not mention any injury to his knee when the incident occurred but referred only to his foot. On this issue Lonnie Bethel, Assistant Foreman, and W. P. Bowie, Timekeeper, both testified that upon being advised of plaintiff's injury they required plaintiff to remove his left shoe and sock and examination of his left foot disclosed evidence of slight injury to plaintiff's great toe only. On this occasion, plaintiff, being advised to consult defendant's company physician, Dr. John DeLoach Thames, proceeded to Dr. Thames' office without assistance.
Upon radiological examination of plaintiff's left foot, Dr. Thames detected no evidence of fracture. He also found no swelling and did not at that time X-ray plaintiff's knee as plaintiff made no complaint with reference thereto, it being Dr. Thames' testimony that plaintiff did not mention his knee until ten days later at which time the doctor X-rayed the knee with negative results. The record is uncontradicted to the effect that plaintiff sustained no fracture and was not hospitalized for any period whatsoever.
Plaintiff returned to Dr. Thames for numerous physiotherapy treatments intended to relieve the pain of which plaintiff complained. In addition to the heat treatments Dr. Thames also prescribed use of an ace bandage and crutches to support and take the weight off plaintiff's injured foot. Plaintiff contends he used the crutches until such time as his armpits became irritated at which time he resorted to a cane but on this point his testimony is contradicted by that of Dr. Thames who stated that he had a difficult time persuading plaintiff to discontinue use of the crutches after he, Thames, concluded plaintiff no longer had need therefor. On September 22, 1958, Dr. Thames discharged plaintiff advising plaintiff that he could resume his employment in 10 to 14 days.
On September 2, 1958, plaintiff consulted Dr. Irving Cahen, Orthopedist, who upon examination found no objective symptoms of injury to plaintiff's knee such as swelling or other discernible tissue change. Dr. Cahen noted normal movement in the joint except that he detected some degree of resistance on the part of plaintiff to movement of the knee. From extensive callosity formation on plaintiff's feet he concluded plaintiff had in fact been walking on his left foot contrary to plaintiff's declaration he experienced pain on ambulation. He found crepitation in both knees although the condition of the left knee in this regard was worse than the right. In his examination Dr. Cahen had the benefit of X-rays taken by Dr. Thames on August 11, 1958, as well as pictures taken of plaintiff's knee by a radiologist, Dr. Teitelbaum, on the date of Dr. Cahen's examination. Based upon said radiological evidence Dr. Cahen concluded plaintiff's arthritis was of long standing and was unaggravated by the accident of July 29, 1958.
Dr. Meyer D. Teitelbaum, Radiologist, testified that on September 2, 1958, he Xrayed plaintiff's knee upon referral by Dr. Cahen. His interpretation of the pictures made revealed no evidence of fracture or dislocation attributable to the accident of July 29, 1958. Although he did detect evidence of what could have been an old impacted fracture of the medial aspect of the upper end of the leg bone. In the opinion of Dr. Teitelbaum the X-rays taken showed long standing degenerative arthrosis of plaintiff's left knee unrelated to and unaggravated by the accident in question.
On October 31, 1958, Dr. Edward T. Haslam, an Orthopedist, examined plaintiff and found no evidence of recent injury to plaintiff's left knee. As did Dr. Cahen he found crepitation in both knees, the condition in the left knee being more severe than in the right. Dr. Haslam could not definitely attribute the condition of plaintiff's knee to *321 the accident but was of the opinion it could have resulted therefrom. In the opinion of Dr. Haslam plaintiff was then unable to work because of his arthritis but he was of the further belief that the arthritic condition he found could have arisen from causes unrelated to trauma.
That plaintiff was, at the time of the accident, suffering from pre-existing arthritis is amply demonstrated in the record. The record, however, fails to contain proof said condition was aggravated by the injury received. In fact, the testimony of the various witnesses leaves serious doubt that plaintiff's knee (his chief cause of complaint) was involved in the accident at all. Moreover, the clear preponderance of the evidence fails to support plaintiff's allegations of continuing disability due to pain. Although plaintiff testified that he could not walk without pain and was compelled to use a cane to get about (in which respect he is corroborated by the testimony of several lay friends and acquaintances), the medical evidence clearly preponderates in favor of the conclusion that if plaintiff is indeed experiencing pain it is due entirely to his pre-existing arthritis which was in no way aggravated by the accident. More specifically, the testimony of Dr. Thames leaves the distinct impression said witness strongly suspected plaintiff of malingering although admittedly Dr. Thames did not testify positively to this effect.
It is elementary that a plaintiff in a compensation suit must, as in all litigation, establish his case by a preponderance of the evidence. Fava v. Jackson Brewing Company, La.App., 86 So.2d 135; Braziel v. Pope, La.App., 86 So.2d 717; Williams v. Harris, La.App., 77 So.2d 744; Schernbeck v. Martenson, La.App., 78 So.2d 848; Scott v. Roy O. Martin Lumber Company, La. App., 116 So.2d 726.
We conclude as did the learned trial court that plaintiff herein has failed to establish by a preponderance of the evidence that he is suffering from continuing disability because of pain resulting from an aggravation of his pre-existing arthritis.
Plaintiff's alternative claim of disability arising from post traumatic neurosis is based solely upon the testimony of Dr. Arthur M. Blood, a psychiatrist who examined plaintiff on one occasion, namely February 4, 1959, for a period of one and one-half hours. Dr. Blood was the only psychiatrist who testified in this matter, defendant having elected not to present any expert testimony on this issue. We note with more than passing interest that although the accident upon which plaintiff sues occurred July 29, 1958, and plaintiff's suit alleging disability from post traumatic neurosis was filed December 5, 1958, the one and only psychiatric examination of plaintiff herein was conducted by Dr. Blood on February 4, 1959, one week prior to the trial of this cause. From the foregoing it is obvious that at the time said allegations were initially made psychiatric confirmation thereof was not available. Moreover, we note that Dr. Blood did not undertake to treat plaintiff and only saw and examined plaintiff on the one occasion mentioned. Dr. Blood's examination consisted of obtaining from plaintiff a "longitudinal psychiatric history" which he explained to be merely a narration by plaintiff of his life history and a "clinical neurological examination" which consisted of a routine physical examination during which he required plaintiff to disrobe and walk about for the purpose of observing his movements and in the course of which he examined plaintiff's cranial nerves. Conceding that the results of his examination were entirely negative he nevertheless concluded plaintiff was suffering from post traumatic neurosis frankly conceding the diagnosis was predicated solely and entirely upon subjective symptoms related to him by plaintiff. Relying upon plaintiff's narration of insomnia, diminished appetite, decreased sexual interest and loss of weight, he concluded plaintiff was afficted with post traumatic neurosis to the extent of producing total disability. The record also *322 shows that the symptoms related to Dr. Blood were corroborated by several of plaintiff's friends and acquaintances who testified in substance that prior to the accident plaintiff was active, energetic and amiable but that after the accident he became listless, disinterested and changed completely.
That recovery may be had in compensation cases for disability resulting from a diagnosis of neurosis or hysteria is firmly settled in the jurisprudence of this state. See Miller v. United States Fidelity & Guaranty Co., La.App., 99 So.2d 511, and cases cited therein.
The problem in the case at bar is not whether plaintiff is substantively entitled to such recovery but whether he has borne the burden of proof incumbent upon him to establish such disability by a fair preponderance of the evidence as the law requires. More particularly, the problem at hand is whether the testimony of Dr. Blood standing alone (except for confirmation by lay witnesses of plaintiff's narration of symptoms such as loss of appetite and weight, etc.) are sufficient to support plaintiff's allegations in this regard.
We believe the instant matter is controlled by the line of jurisprudence established in Mouton v. Gulf States Utilities Company, La.App., 69 So.2d 147; Phelps v. Royal Indemnity Company, La.App., 77 So.2d 225; Etienne v. Algernon Blair, Inc., La.App., 100 So.2d 533; Rowan v. Travelers Insurance Company, La.App., 111 So.2d 387 and Corral v. Crawford Homes, Inc., La.App., 113 So.2d 820. Indeed the case at bar is remarkably similar to the Mouton case, supra, in which it was held that the testimony of a psychiatrist, predicated on history narrated by plaintiff in two question and answer periods lasting 45 minutes each, did not constitute proof of traumatic neurosis by a clear preponderance of the evidence. We further observe that in the Phelps case, supra, that dismissal of a plaintiff's action predicated upon neurosis was upheld where two of three psychiatrists testified plaintiff was afflicted with such malady but the remaining expert was of a contrary opinion and the medical doctors found no evidence of physical injury. In the Etienne case, supra, we observe that the testimony of two psychiatrists was considered insufficient to establish disability from neurosis where such diagnoses were predicated solely upon subjective symptoms related by plaintiff. Finally, we note that in the Corral case, supra, this court affirmed the judgment of the trial court which rejected a similar contention supported only by the testimony of a single psychiatrist who examined plaintiff on one occasion four days prior to trial and rendered a diagnosis based exclusively upon a history related by plaintiff.
In view of the foregoing we conclude the learned trial court properly found that plaintiff is not disabled because of post traumatic neurosis.
The record shows that plaintiff was employed at an hourly wage of $1. Following his injury he was paid compensation at the rate of $26 per week until September 15, 1958. It is obvious that defendant erroneously computed the rate of his compensation on the basis of earnings in the sum of $40 per week since 65% of $40 is exactly $26. In so doing defendant fell into patent, manifest error and disregarded the jurisprudence established by the Supreme Court of this State in Carrington v. Consolidated Underwriters, 1956, 230 La. 939, 89 So.2d 399 and recently followed in Pope v. Coney, La.App., 119 So.2d 136, wherein all former confusion and uncertainty with respect to the manner of computing compensation rate was resolved. The foregoing decisions make it abundantly clear that after determining the employee's daily rate of pay the six-day week is to be employed in calculating weekly wages for compensation purposes, irrespective of the number of days or hours he actually works.
*323 It will be recalled plaintiff's compensation was terminated as of September 15, 1958, despite the fact that Dr. Thames (defendant's company doctor) at least impliedly informed plaintiff on September 22, 1958, not to return to work until approximately two weeks subsequent to said latter date. From this we conclude that plaintiff's disability (to the knowledge of defendant's own medical authority) continued until October 13, 1958. Plaintiff is clearly entitled to compensation for said additional three-week period and, under the circumstances shown herein, defendant's failure to pay compensation therefor was arbitrary and capricious entitling plaintiff to the penalties and attorney fees prayed for. The testimony is conclusively to the effect plaintiff normally worked an 8-hour day. His hourly rate of pay being $1, his weekly wage must be computed on the basis of $8 per day for a six-day week or $48. See the Carrington and Pope cases, supra. His correct compensation rate therefore is 65% of $48 or $30.20 weekly instead of the $26 weekly paid by defendants.
Considering all the circumstances of this case we feel that an award of attorney's fees in the sum of $350 will accomplish substantial justice between the parties.
For the reasons hereinabove set forth the judgment of the trial court is reversed and judgment rendered herein in favor of plaintiff Johnnie Phillips and against defendant Reimers-Schneider Company, Inc., and Underwriters at Lloyd's of London decreeing said defendants Reimers-Schneider Company, Inc., and Underwriters at Lloyd's of London indebted unto plaintiff Johnnie Phillips, in solido, for workmen's compensation benefits in the sum of $30.20 per week commencing July 28, 1958, and terminating October 13, 1958, subject to a credit for all compensation paid during the period July 28, 1958, to September 15, 1958, inclusive, and all costs of these proceedings. Judgment is further rendered herein in favor of plaintiff Johnnie Phillips and against defendant Underwriters at Lloyd's of London in the sum of 12% of the amount hereinabove decreed due said plaintiff herein as unpaid compensation benefits together with the sum of $350 attorney's fees.
Reversed and rendered.