SAMUEL, Judge.
This is a suit in workmen’s compensation for total and permanent disability benefits. Plaintiff was involved in an automobile accident while in the defendant’s employ as a taxicab driver. He suffered cervical and lumbar injuries when his cab was struck from the rear by another vehicle. The trial court judgment, based upon a finding that plaintiff was physically disabled and with no finding of mental or emotional disability, awarded compensation at $35.00 per week for a period of 300 weeks, subject to a credit for compensation already paid, plus the sum of $2,500.00 for “present and future” medical expenses. The defendant has appealed and plaintiff has answered the appeal seeking an increase in the award from 300 to 400 weeks.
Defendant contends: (1) plaintiff has recovered from his injuries and has received all of the compensation to which he is entitled; (2) alternatively, an award for future medical expenses is improper in workmen’s compensation; and (3) also alternatively, if further compensation is awarded it should be on the basis of less than $35.00 per week. Defendant also -contends that its objection to the admission of testimony by a psychiatrist, which objection was overruled, should have been maintained for the .reason that psychoneurosis, the subject of the testimony, had not been pleaded by the plaintiff. Our conclusion as to defendant’s first contention, that plaintiff has received all of the compensation to which he is entitled, makes a consideration by us of its other contentions, and of plaintiff’s answer to the appeal, unnecessary.
Following the accident plaintiff was taken by ambulance to a hospital where he received treatment for about three weeks. The treatment consisted of cervical traction, physical therapy, medication, heat, and the use of a neck support. He also received outpatient treatment involving whirlpool baths, electric diathermy and heat for a period of about two and one-half months. His treating physicians were Drs. Dwyer J. Farley, and Sol Winokur, defendant’s doctors, and Dr. Charles W. Peterson, plaintiff’s own family doctor. After plaintiff’s discharge by the treating physicians, and slightly more than seven months after the occurrence of the accident, defendant sent him to Dr. Irving Redler, an orthopedist. As a result of Dr. Redler’s findings defendant paid no further compensation benefits. Plaintiff’s attorney then sent him to four additional physicians; he revisited his family doctor; and he was seen by one other doctor or behalf of defendant.
Six witnesses, the plaintiff himself and five physicians, testified for the plaintiff. Defendant offered four witnesses and the report of one physician, Dr. Redler. One of the defendant’s witnesses testified only as to the dates of plaintiff’s employment by, and income received from, the defendant; its remaining three witnesses were physicians.
Plaintiff's complaints at the time of trial relate to dizziness and blackout spells, pain *152 in one arm and fear of riding in a motor vehicle. He first complained of dizziness and blackout spells about eleven months after the accident.
All of the defendant’s medical witnesses, Drs. Dwyer A. Farley, a general practitioner and a treating physician, Sol Wino-kur, a specialist in physical medicine and also a treating physician, and Richard W. Levy, a specialist in neurosurgery, testified,, and Dr. Redler’s report stated, that the plaintiff had recovered from the effects of the injuries he received in the accident and was able to return to work as a taxicab driver.
Other than the psychiatrist, whose testimony will be discussed later, plaintiff’s medical witnesses were Drs. Chester W. Peterson, a general practitioner who was also plaintiff’s family physician and one of his treating physicians, and three orthopedists, Byron M. Unkauf, George C. Bat-talora, Jr. and Blaise Salatich.
Dr. Unkauf examined plaintiff on one occasion and was •of the opinion that he could return to work as a taxicab driver although he would have some slight discomfort for a time during weather changes. Dr. Battalora saw the plaintiff on three occasions over a period of three months. After his first examination he was of the opinion that plaintiff could return to his work. Plaintiff did not complain to Dr. Battalora of dizziness and blackout spells until his third visit, more than eleven months after the date of the accident. After-that complaint this doctor was of the opinion that from, an orthopedic standpoint plaintiff could return to work but that he was disabled and unable to work as a taxi driver because of the dizziness and blackout spells. However, Dr. Battalora did not feel that an orthopedist is able to evaluate dizziness and blackout spells and for that reason expressed no opinion as to their cause.
Neither plaintiff’s nor defendant’s counsel asked Dr. Peterson whether or not the plaintiff was able to return to work, a fact' we find exceedingly strange on the part of plaintiff; Dr. Peterson was his witness and testimony on that point could have been favorable to him. After participating in the treatment Dr. Peterson did not see the plaintiff again until slightly more than eleven months after the accident. At that time plaintiff complained of dizziness, headaches and blackout spells. Dr. Peterson gave plaintiff a full examination including an electroencephalogram, which was negative, and concluded that these complaints were probably due to a middle ear disturbance, for which he placed plaintiff on drugs.
Dr. Blaise Salatich saw the plaintiff twice. Both occasions were less than one month before the trial and approximately sixteen months after the accident. He noted some twenty complaints and with these as a basis concluded that the plaintiff was permanently and totally disabled. We cannot accept his conclusion. I-Iere he is con-, tradicted, in whole in most instances and in part in others, not only by the medical experts called by the defendant, but also by the experts called by the plaintiff.
The record thus reveals that, other than Dr. Salatich, the only physician who testified plaintiff was physically incapable of returning to work was Dr. Battalora. And Dr. Battalora, as we have pointed out, felt that he was incapable of driving a taxi solely because of the dizziness and blackout spells; orthopedically he felt that the plaintiff could return to work.
The problem involving dizziness and blackout spells is in the neurological field and Dr. Levy, the specialist in neurosurgery, after a complete physical examination, a study and review of X-rays, and pertinent neurological tests, concluded that the dizziness and blackout spells complained of by the plaintiff were unrelated to the accident, a conclusion also reached by Dr. Peterson. Other than Dr. Salatich, Drs. Levy and Peterson were the only physicians *153 to evaluate the dizziness and blackout spells. We accept the findings of the latter two physicians that the dizziness and blackout spells were unrelated to and not caused by the accident. Plaintiff therefore is not entitled to further compensation based on physical injury.
We now address ourselves to the question of whether or not plaintiff’s alleged disability was caused by neurosis, or some other emotional disturbance, induced by the injuries he suffered in the accident. A neurosis was not pleaded; plaintiff’s petition alleges only physical injuries and psychiatric testimony as to neurosis was introduced over defendant’s timely objection. The testimony did constitute an extension of the pleadings and, even though this is a suit in workmen’s compensation with liberal rules of pleadings and evidence, we would remand the case, for amendments by the plaintiff as to neurosis and for a full opportunity for the defendant to answer such amendments and offer evidence relative thereto, if we were of the opinion that, on the record as it now stands, plaintiff was entitled to further compensation based on neurosis. See James v. Acme Window Cleaners, La.App., 139 So.2d 586. PIow-ever, we have reached the opposite conclusion.
It is now our settled jurisprudence in compensation cases that recovery may be had for disability resulting from neurosis or hysteria. Williams v. Bituminous Casualty Corporation, La.App., 131 So.2d 844; Phillips v. Underwriters At Lloyd’s of London, La.App., 128 So.2d 318; Miller v. United States Fidelity and Guaranty Company, La.App., 99 So.2d 511. As in other workmen’s compensation suits, the plaintiff who bases his claim upon a neurosis must prove his case by a preponderance of the evidence. Elliot v. Insurance Company of North America, La.App., 159 So.2d 313; Davenport v. Kaiser Aluminum & Chemical Corp., La.App., 146 So.2d 834; Phillips v. Underwriters At Lloyd’s of London, supra. The problem iñ the instant case is whether plaintiff has borne this burden of proof and established disability by neurosis by a fair preponderance of the evidence.
Plaintiff was referred to Dr. John M. Albea, a psychiatrist, by Dr. Salatich. Dr. Albea read Dr. Battalora’s medical report and saw the plaintiff on two occasions less than a month before the trial and approximately sixteen months after the accident. On each occasion he interviewed and “mentally examined” the plaintiff for one hour. Plaintiff told this doctor that following the accident he was afraid to drive or ride in a motor vehicle. The doctor concluded that plaintiff had a psychoneurosis, anxiety type, as a result of the accident. He felt that with psychotherapy and medication plaintiff had a chance to improve and eventually return to his work but that adequate improvement would not appear in the near future. He was of the opinion that because of the psychoneurosis plaintiff could not perform his duties as a taxi driver.
Plaintiff testified on cross examination that he mentioned his fear of driving and riding in motor vehicles to most of the doctors who saw or treated him. But, despite the fact that all of the doctors listed and testified to the complaints made to them by the plaintiff, not one of them, with the single exception of Dr. Albea, testified that plaintiff had mentioned such a fear to him. Even Dr. Salatich, with his tremendous list of complaints, did not include one involving a fear of driving or riding in a motor vehicle. Dr. Salatich testified that he referred the plaintiff to Dr. Albea because he felt plaintiff was “depressed and emotionally unstable”. Additionally, Dr. Albea testified on cross examination that plaintiff did not volunteer to him any complaints about fear of driving or riding in motor vehicles. The information was elicited by the doctor who asked plaintiff if he had any such fear.
*154 While each case must be decided in the light of its own particular facts and circumstances, the dangers of abuse present in the acceptance of mentaLand nervous disorders as constituting disability for compensation purposes require that the evidence in such cases be scrutinized with extreme care and caution. See Williams v. Bituminous Casualty Corporation, supra.
As was true of our brothers of the First Circuit in the case of Phillips v. Underwriters At Lloyd’s of London, supra, we believe this case is controlled by the line of jurisprudence established in Corral v. Crawford Homes, Inc., La.App., 113 So.2d 820; Rowan v. Travelers Insurance Company, La.App., 111 So.2d 387; Etienne v. Algernon Blair, Inc., La.App., 100 So.2d 533; Phelps v. Royal Indemnity Company, La. App., 77 So.2d 225 and Mouton v. Gulf States Utilities Company, La.App., 69 So. 2d 147. Mouton v. Gulf States Utilities Company is illustrative of that jurisprudence. In Mouton the court held that the testimony of a psychiatrist, predicated on history narrated- by the plaintiff in two question and answer periods lasting 45 minutes each, did not constitute proof of traumatic neurosis by a preponderance of the evidence.
Considering all the facts and circumstances involved in the instant case, we are of the opinion that the testimony of Dr. Albea does not constitute proof, by a preponderance of the evidence, of plaintiff’s claim that he sustained a psychoneurosis as a result of the accident.
For the reasons assigned, the judgment appealed from is reversed and it is now ordered that there be judgment in favor of the defendant, Toye Brothers Yellow Cab Company, and against the plaintiff, Malcolm M. Junker, Sr., dismissing said plaintiff’s demand at his cost in both courts.
Reversed and rendered.