CHRIS T. BARNETTE, Judge pro tem.
This is a suit for workmen’s compensation wherein the plaintiff claims total permanent disability resulting from injuries received in an accident in the course of employment. From a judgment rejecting her demands, the plaintiff has appealed.
The plaintiff, a woman in her fifties, was employed by American Moving and Storage Company, the defendant’s insured, as an estimator of household moving costs. Her duties required her to visit the homes of prospective customers and make estimates of the cost of moving household furnishings. Obviously this required the use of an automobile and entailed some trips to other cities and towns. While in the discharge of these duties on a trip to Pascagoula, Mississippi, for some unexplained reason the automobile which she was driving left the highway and overturned and she was injured. There is no dispute of these facts, and it is conceded that she was entitled to workmen’s compensation of $35.00 per week during the period of her disability. The rate of her pay was approximately $80.00 per week, and she was paid $35.00 per week compensation for a period of 45 weeks. The payments were discontinued on the alleged ground that she had recovered from the injury sustained and was able to resume employment.
Plaintiff contends that as a direct result of physical injuries sustained in the accident of October 22, 1960, she has suffered a traumatic neurosis causing her to be totally disabled.
There is no doubt that plaintiff sustained multiple contusions; fractures of three ribs on the left side; and a compression fracture of the twelfth thoracic vertebra. After several days in the hospital, she was released under continued treatment of Dr. Herman Rabin for approximately 11 months. During this period of treatment Dr. Rabin observed an increase of anxiety *20 and testified that by March, 1961, the rib fractures had healed and the compression fracture had become stabilized but that the subjective and objective finding's were increasingly distorted. Her complaints had become directed at the lumbo-sacral regions with pains radiating into the coccyx. X-ray examination of this area was negative. Diathermy and posture exercises were recommended, but plaintiff, according to Dr. Rabin, “bitterly complained of pain in the lumbo-sacral area.” No objective signs of injury could be found; no muscle spasm; straight leg raising tests were normal; reflexes normal; and no atrophy of any extremities. The range of back motion was full and Dr. Rabin could find no objective symptom to indicate cause of pain.
In June, 1961, plaintiff was examined by Dr. Hyman R. Soboloff, and in July by Dr. George Battalora, both orthopedic specialists. Their findings were substantially the same as those of Dr. Rabin. In September, Dr. Rabin reported to the defendant, insurer, that he had done all he could for the plaintiff, but that she had not been fully rehabilitated, or refused to be rehabilitated, and that no further medical treatment was indicated.
The plaintiff was examined by three orthopedists; six psychiatrists or psychiatric-neurologists ; one surgeon; one general practitioner; one internist; and one psychologist — all of whom testified or gave written reports which by stipulation were accepted in evidence. Some of the examinations were at Government expense in connection with an application for Social Security benefits. Without attempting a summary of the testimony of each one, we find that there is fairly general agreement among them insofar as objective symptoms of pain are concerned. Orthopedically she has some impairment of the functions of the back which we will discuss more fully later, but otherwise there is no apparent reason in the opinion of the doctors why the plaintiff could not return to her employment from a physical standpoint. Plaintiff does not contend that she is totally incapacitated physically but claims to have suffered a serious traumatic neurosis from which she is totally and permanently disabled.
The psychiatrists, with the exception of Dr. Henry Tharp Posey, described her condition in such terms as traumatic neurosis; depression with trauma; psychotic depressive reaction; and depression with anxiety, with some suggestions of paranoid personality. They were not entirely in agreement on prognosis but were in general agreement that she appeared to be a very disturbed person emotionally and exhibited subjective symptoms of pain. There was some difference in degree of belief among them of the truthfulness of her statements. None of them had interviews with her husband or persons who might have corroborated her statements about herself. They all testified that their conclusions were largely dependent upon the truthfulness of her representations.
Other than the medical experts, only one witness testified in plaintiff’s behalf, a Mrs. Shirley Graf. Mrs. Graf had known plaintiff in a friendly relationship since April, 1959. Her testimony is significant in that it makes no mention of the emotional change, if any, which might have taken place in plaintiff. Instead she confined her observations to the physical condition and the impairment, to some extent, of Mrs. Ursin-Smith’s ability to work in her flower garden and pursue domestic chores. Since the important question in this case is the credibility of the plaintiff in regard to her representations to her doctors of pain and total incapacity on account thereof, the failure of this witness to comment on the subject is particularly significant. We must assume that no evidence of such pain had attracted her notice. The absence of corroborating witnesses to support plaintiff’s statements to the doctors about herself was a strong factor in influencing the decision of the trial judge.
We recognize the principle which has been firmly established in the jurisprudence of Louisiana allowing recovery for *21 disability based upon traumatic neurosis.[1] We could not state the problem before us more clearly than was done in the Miller case [2] wherein the court said:
“In the instant case there can be no doubt as to the establishment of the original injury by indisputable objective evidence. The question here tendered involves the sufficiency, vel non, of subjective evidence of disability which is related to the original accidental injury. In the resolution of this point it is necessary to determine the nature and character of the asserted disability which is denominated as 'traumatic neurosis’ or 'conversion hysteria’. These medical terms are generally synonymous and fall within that specialty of medical science which deals with mental and nervous, rather than physical, affections and disabilities. For this reason we are not disposed to give any weighty consideration to the testimony of the orthopedic specialists. The chief value of this testimony is found in the fact that it has established beyond question the ■original physical injury. Our task is to determine whether plaintiff’s alleged disability is real or imaginary.”
The question we must decide therefore is one of a factual nature; and we are not unmindful of the caution to be observed in such cases repeated time and again in our jurisprudence and in the Miller case in the following language:
“ * * * The principle that courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such a con-elusion is so well imbedded in our jurisprudence as to preclude the necessity for specific citations.”
The very nature of the illness is such that a great reliance must be laid on the subjective symptoms which of necessity must come from the claimant. This, however, does not free the claimant of the burden of preponderance of evidence and the duty to support his claims with corroborative evidence. We can think of no more competent persons to give this corroboration than members of the claimant’s household, friends, and associates who have an opportunity to observe and evaluate the feelings of the claimant at unsuspicious times. The plaintiff’s case before us is significantly weak in this respect.
The testimony of the psychiatrists, Drs. Smith, Sanchez, Carlos, Sugar, and Cohen, is very persuasive, notwithstanding the contradictory opinion of Dr. Tharp Posey, who emphatically stated “It is my diagnostic opinion that this patient has no neurologic disorder and is malingering with malice aforethought.” Dr. Posey had made an examination of the plaintiff on October 1, 1962, in connection with an application for Social Security benefits, and very frankly admitted that he had no recollection whatever of the plaintiff or the examination. He stood on his report made at the time stating in substance that he would not have made such a report had it not been his professional opinion and diagnosis. We can understand how Dr. Posey had no recollection of the examination. To him this was just another examination among many, and it would be unrealistic and unfair to assume that he could remember all such patients examined by him over a period of *22 time. We do not attach any significance to his inability to recall the examination and have given some consideration to his expressed opinion. Our opinion upholding the judgment of the trial court is not so much based upon our reliance on the testimony of Dr. Posey as it is on our failure to find manifest error in the judgment of the trial court.
We have, as the law requires, given a great deal of consideration to the reasons for judgment of the trial court. The trial judge was unequivocal and stated with more than usual emphasis that he doubted the credibility of the plaintiff. He pointed out that the opinions of the psychiatrists were strongly influenced by the things communicated to them by the plaintiff both in words and actions. Pie said:
“There is not the slightest doubt that when the plaintiff visited the various psychiatrists, her physical appearance and the manner in which she walked, sat, and acted were to some extent simulated and influenced the opinion of the doctors who examined her. While motion pictures in a case of this type are of very little value in establishing the true condition of a compensation claimant, the pictures exhibited to the Court did reveal that, at approximately the period of time during which plaintiff was in apparently such agony in Dr. Sanchez’ office, she was able to perform normal functions, at least for short periods, without the outward indications of acute distress revealed to the doctor.
“Likewise, there is no disagreement among the various psychiatrists that there are many incidents in plaintiff’s past history which could account for what they considered to be her present condition. Further, there is general agreement that plaintiff was suffering from some type of psychiatric disorder prior to the accident. * * *
******
“The opinion of each doctor was predicated in part on the difference in plaintiff’s functional ability before and after the accident. They, of necessity, relied on her statement of her activities prior to the accident to make the comparison necessary to reach an opinion. While there is some difference in the values placed by each psychiatrist on the particular matters related to them by the plaintiff, all doctors were in agreement that she was not completely truthful. Each doctor made his own determination as to which part of her history and complaints he believed and which parts he did not believe. So far as the record shows, no attempt was made to correlate anything communicated to the doctors by the plaintiff with third persons who may have had some knowledge of her activities, particularly her husband and son, who not only were not consulted by the doctors but were not called as witnesses to testify on plaintiff’s behalf. The established fact of plaintiff’s untruthfulness should have made such a correlation necessary.”
We are fully aware of the caution which should be observed in cases of this type that a worthy claimant should not be denied recovery merely because of inability to support her claim with corroborating testimony. In many such cases we must rely on the subjective symptoms very heavily. We do agree, however, that the trial judge made a significant observation wherein he pointed out that no attempt was made to correlate the subjective symptoms as given to the doctor by the patient with the testimony of other persons in position to have knowledge of her condition and in a position to make observation of her at unsuspicious times. This weakness in plaintiff’s case, as pointed out by the District Judge, was a significant factor which influenced his judgment.
Having seen the plaintiff and observed her responsiveness and demeanor on the witness stand, the District Judge was in a better position to determine the need of this *23 corroborating testimony than we are. Evidently this was a determining factor and we are unable to find manifest error.
We are of the opinion, however, that the plaintiff has suffered some permanent impairment in the physical function of her back as a direct result of the injuries sustained. The three orthopedic physicians who examined her rated this disability from 5 to 30 percent. Dr. Battalora testified that this disability, which he fixed at 5 to 10 percent, resulted from conditions not directly related to the accident in question. On the other hand, Dr. Soboloff, who estimated disability from 20 to 30 percent, and Dr. Levy, who estimated it at 10 percent, were of the opinion that it was directly related to the injuries sustained October 22, 1960.
The trial judge apparently accepted the testimony of Dr. Battalora that this impairment resulted from causes not related to the accident and then said in substance that it really made no difference since she had been paid a sufficient amount of compensation to offset any award she might be entitled to on account of functional impairment. He applied credit for compensation previously paid on a dollar for dollar basis. This, we think, was the correct formula to apply; although there are a few cases in our jurisprudence in which the week for week formula has been used, which we discuss more fully below.
We have given little consideration to the motion pictures filed in evidence and exhibited to this Court showing the plaintiff doing domestic chores, stooping and bending in her flower garden, hanging out clothes, shaking rugs, etc. There is no contention that she is totally disabled physically; the contention is that she is disabled because of traumatic neurosis. The physical movements depicted by the motion pictures do not change our opinion that plaintiff has some impairment of the functions of her back.
In giving full weight to the testimony of Dr. Battalora, we think the trial court over; looked the testimony of Drs. Soboloff and Levy that the partial impairment of the functions of plaintiff’s back was attributable to the injuries of October 22, 1960. We have accepted the testimony of these latter two orthopedists and concluded that the impairment is from 15 to 20 percent. Accordingly, she is entitled to recovery under LSA-R.S. 23:1221(4) (p). Taking into account plaintiff’s average weekly wage before the accident, approximately $80.00, and considering her impairment to be 15 to 20 percent, we think an allowance of $12.00 per week for 100 weeks would be reasonable. Allowing credit for the compensation previously paid, totaling $1,575-GO, there remains nothing due.
LSA-R.S. 23:1223 provides as follows:
“Where compensation has been paid under subdivisions (1), (2), or (3), of R.S. 23 :1221, the amount of such payment shall be deducted from any compensation allowed under subdivision (4) thereof or under Sub-part C of this Part.”
In Griffin v. Liberty Mutual Insurance Company, 131 So.2d 153 (La.App.2d Cir. 1961), which followed, and quoted at length from, Francois v. Circle Drilling Company, 112 So.2d 771 (La.App. 1st Cir.1959),. credit was allowed for the “weeks” previously paid. In the Francois case the employee had been paid compensation at $35.00 per week for a number of weeks of temporary total disability. The Court allowed under LSA-R.S. 23:1221(4) (p) for permanent impairment of a physical function (hearing) $35.00 per week for 100 weeks “less credit for five weeks compensation paid at such rate.” (Emphasis ours.) Obviously, since the credit allowed would be the same computed in weeks or dollars, it was not necessary for the Court to be more specific. In neither the Griffin case nor the Francois case was any reference made to LSA-R.S. 23:1223.
We think LSA-R.S. 23:1223 and the majority of cases on this point clearly mean that credit for compensation pre *24 viously paid is on a dollar for dollar basis; in other words, the amount paid and not the number of weeks. Ball v. American Marine Corporation, 150 So.2d 865 (La. App. 4th Cir.1963); Anderson v. Continental Can Company, 141 So.2d 48 (La. App.2d Cir.1962) ; Miller v. General Chemical Division, 128 So.2d 39 (La.App. 1st Cir.1961); Flanagan v. Welch, 93 So.2d 36 (La.App. Orleans 1956); Jackson v. Steel Fabricators, 90 So.2d 397 (La.App. Orleans 1956) ; Dronet v. American Mutual Liability Ins. Co., 69 So.2d 114 (La.App. 1st Cir.1953) ; Goins v. Shreveport Yellow Cabs, 200 So. 481 (La.App. 2d Cir.1941).
We are in thorough accord with the views expressed by Judge Hardy in his concurring opinion in Anderson v. Continental Can Company, supra, wherein he ably points out the injustice which often results to an injured employee by the application of LSA-R.S. 23:1223 and the need of legislative reexamination of the subject.
The judgment appealed from is affirmed at appellant’s cost.
Affirmed.

. See Miller v. United States Fidelity and Guaranty Co., 99 So.2d 511 (La.App.2d Cir. 1958), for full discussion of the subject with numerous citiations of authority. A few of the numerous later cases reciting the same principle are: Junker v. Toye Brothers Yellow Cab Company, 163 So.2d 150 (La.App. 4th Cir. 1964); Elliott v. Insurance Company of North America, 159 So.2d 313 (La.App.2d Cir. 1963); Joseph v. Southern Pulpwood Insurance Company, 140 So.2d 725 (La. App.3rd Cir. 1962); Williams v. Bituminous Casualty Corporation, 131 So.2d 844 (La.App.2d Cir. 1961).

. Miller r. United States Fidelity and Guaranty Co., supra, note 1, 99 So.2d at page 515.