SAMUEL, Judge.
This is an appeal by the plaintiff from a judgment dismissing his suit in workmen’s compensation for total and permanent disability benefits.
Plaintiff, a 36-year-old common laborer, was injured while employed by the defendant on September 29, 1964 when he fell from a scaffold at defendant’s shipyard. He was taken to a hospital where he remained for six days for observation purposes under the care of Dr. Dwyer Farley, defendant’s physician. His complaints involved pain and soreness in the anterior thoracic region, right femur region, head, and index finger of the right hand. X-rays were taken which were negative and tenderness was the only evidence of injury the doctor could find. Plaintiff continued to complain after his discharge from the hospital and, although Dr. Farley found no medical basis for the complaints, he continued to see plaintiff as an outpatient. On November 11, 1964 the doctor advised a return to work. But because plaintiff felt he was not physically able to do so Dr. Farley had Dr. Richard A. Corales, Jr., a neurosurgeon, examine him on November 23, 1964. Dr. Corales found no neurological reason why plaintiff could not return to work. But again because of continued complaints, plaintiff was examined by Dr. James L. L’eNoir, an orthopedic specialist, during late December of 1964. Dr. LeNoir found no evidence of injury or residual. Shortly after that examination defendant discontinued compensation payments.
Dr. Farley’s testimony is that plaintiff greatly exaggerated his complaints. He gave these examples of exaggerations: During examinations plaintiff stated he could not bend over and yet, in picking up his trousers after the examination had been concluded, he could and would stoop and bend in the same manner he had denied being able to do; he complained of pain when pressure was applied to a particular area of his body and yet did not complain of pain when pressure v/as applied to the same area when his attention was directed elsewhere; and he complained of extreme pain when receiving physical therapy with the use of a diathermy machine and complained equally as much when the machine was not in operation although in the latter case it could not cause pain. This doctor also testified that in connection with his treatment of the plaintiff he filled out forms under which, in addition to weekly workmen’s compensation, plaintiff was receiving benefits under three insurance policies for the same accident.
We need discuss plaintiff’s physical injuries no further. He concedes he had recovered therefrom at the time of Dr. Le-Noir’s examination and that, as far as those injuries are concerned, he has been fully compensated. His suit is based on an alleged conversion neurosis which, according to his petition, was caused by the accident and totally and permanently disables him from doing any work of a reasonable nature.
It is now our settled jurisprudence in compensation cases that recovery may be had for disability resulting from neurosis. However, as is true in compensation suits involving physical injuries and generally in all other civil actions, where the alleged disability is predicated upon neurosis the plaintiff must establish his claim to a legal certainty and by a reasonable preponderance of the evidence. Ursin-Smith v. United States Casualty Company, La.App., 173 So.2d 18; Junker v. Toye Brothers Yellow Cab Company, La.App., 163 So.2d 150; Elliott v. Insurance Company of North America, La.App., 159 So.2d 313; Davenport v. Kaiser Aluminum & Chemical Corp., La.App., 146 So.2d 834; Phillips v. Underwriters At Lloyd’s of London, La.App., 128 So.2d 318.
And, as this court said in Junker v. Toye Brothers Yellow Cab Company, supra, 163 So.2d at page 154 (see also Elliott v. Insurance Company of North America, supra; Litton v. London Guaranty & Acci *411 dent Company, La.App., 133 So.2d 858; Mouton v. Gulf States Utilities Co., La.App., 69 So.2d 147; Malone, Louisiana Workmen’s Compensation Law and Practice § 257):
“While each case must be decided in the light of its own particular facts and circumstances, the dangers of abuse present in the acceptance of mental and nervous disorders as constituting disability 'for compensation purposes require that the evidence in such cases be scrutinized with extreme care and caution.”
Testimony pertinent to the alleged neurosis in the instant case was given by plaintiff, two of his friends and Dr. Charles Rodney Smith, a psychiatrist.
One of plaintiff’s two lay witnesses worked for Gulf Stevedore on the river front. He had obtained employment for plaintiff with that concern subsequent to the accident upon which this suit is based. He testified, plaintiff had requested and been given lighter work and on those occa-. sions when he saw plaintiff on the job with Gulf' Stevedore he was doing such lighter work. However, he saw plaintiff working only on some occasions; he did not see him when he was working in the hold of a ship where the work usually is-of a heavy nature. The other lay witness, a lifelong friend, testified that, although plaintiff had enjoyed frequent hunting and fishing trips prior to the accident, he no longer did so.
Plaintiff testified as follows: He still had pain in his right shoulder, right arm, back and right hip from the accident and as a result was unable to do the heavy work required of him at the defendant’s shipyard. Prior to seeing Dr. Smith for the first time on September 1, 1965, he had seen no doctor and had sought no medical help'since Dr. LeNoir’s examination in December of 1964. Since the accident he has worked on the river front as a longshoreman and as a freight handler for several'firms, including Gulf Stevedore, New Orleans Stevedore, Terry Smith and Neeb Kearney. (Other evidence in the record establishes that he did this work, with considerable regularity considering the practice of daily hiring such workers and the fact that plaintiff was not a union member, from October 26, 1964 to and including the week immediately before trial, all for substantially higher wages than he had received from the defendant.) These jobs were not as strenuous as the one he had held with the defendant and the work he performed as a longshoreman was not as strenuous as that. required of other longshoremen.
Dr. Smith was the only psychiatrist who testified. He saw plaintiff on three-occasions, September 1, 15 and 22, 1965, just short of one year after the occurrence of the accident and during the same month in which this suit was filed on September 24, 1965. On those occasions he gave plaintiff a physical examination, took his history, interviewed him concerning his family, social background and mood and tested his mental status. He also reviewed plaintiff’s hospital record and the medical reports of Drs. Corales and LeNoir and interviewed plaintiff’s wife. According to the doctor, the wife failed to reveal much corroborative evidence concerning the illness. Plaintiff’s chief complaint was the occurrence of pain in the right shoulder, arm,' hand, hip and back and of headaches. The doctor could find no physical evidence of or basis for those complaints.
Dr. Smith felt plaintiff’s complaints were psychologically based; that he honestly believed he was suffering from physical ailments and .should be receiving physical treatment therefor. Because the history given by plaintiff did not reveal similar complaints prior to the accident, this doctor was of the opinion that the complaints were related to the accident. He was unable to state that plaintiff was. disabled from returning to his former work with • the' defendant because he did not know what plaintiff’s duties‘with the defendant had been; but he did feel there was some impairment in plaintiff’s productivity and his ability to do heávy manuál labor, a condition which could become worse. He was- unable to de *412 termine a percentage of disability but felt there was some partial disability.
Dr. Smith was unable to characterize plaintiff’s illness. He testified it was not traumatic neurosis or conversion hysteria; it was related to “compensation” neurosis in that a prompt settlement of this litigation, if satisfactory to plaintiff, would probably cause amelioration of the physical complaints over a period of time. When asked by the trial judge if he had reached a diagnosis as to plaintiff’s mental illness he stated “ * * * its really not given in any kind of specific category.”
Apparently Dr. Smith accepted as true everything told to him by plaintiff during the three interviews. The doctor felt plaintiff had been sincere and as cooperative as could be expected in view of the mental illness. However, Dr. Farley’s testimony is to the contrary on the question of sincerity and truthfulness. And the trial judge specifically found that plaintiff was not sincere in his testimony, a finding with which we do not disagree. That finding is based, in part, on testimony given by plaintiff which we have not as yet mentioned. Plaintiff testified that prior to the accident here involved he had a workmen’s compensation claim for a hernia for which he collected compensation about six months later. During the time he was supposedly disabled he admits he was doing heavy work on a sugar plantation cutting grass out of growing cane and stacking 100 pound sacks of sugar, a fact he had not revealed even to the attorney who handled his claim.
Dr. Smith’s testimony relative to plaintiff’s mental illness is vague, confusing, inconclusive and unconvincing. And, as we are satisfied from the record that the work plaintiff has been performing on the river front as a longshoreman and as a freight handler since the date of the accident has included' manual labor approximately as heavy as that which he had done while working for the defendant, his opinion that plaintiff had suffered impairment in ability to do heavy manual labor and some partial disability appears to be contrary to the actual facts.
We conclude plaintiff has failed to establish his claim to a legal certainty and by a reasonable preponderance of the evidence.
The judgment appealed from is affirmed.
Affirmed.