77 So.2d 225 (1955)
Leo C. PHELPS, Plaintiff-Appellant,
v.
ROYAL INDEMNITY COMPANY, Defendant-Appellee.
No. 20417.
Court of Appeal of Louisiana, Orleans.
January 3, 1955.
Rehearing Denied January 31, 1955.
Harold J. Winling and Paul J. Thriffiley, Jr., New Orleans, for plaintiff-appellant.
Bienvenu & Culver and P. A. Bienvenu, New Orleans, for defendant-appellee.
JANVIER, Judge.
This is a suit for workmen's compensation.
In his original petition Leo C. Phelps, the plaintiff, alleged that, on the night of March 24, 1953, while he was engaged in hazardous work as an employee of Charles Ferran & Company, there occurred an accident in which he sustained "a severe strain of his back with severe pain in his lower back, right leg and ankle," and that, as a result, he is totally and permanently disabled. He alleged that Royal Indemnity Company had issued to the said Ferran Company a policy of liability insurance and he prayed for judgment against the said insurance company in the sum of $30 per week for a period of 400 weeks.
Royal Indemnity Company, the insurer, admitted that it had issued such a policy to the Ferran Company, but denied that any accident had occurred or that plaintiff had sustained any injury as a result of any such alleged accident.
Defendant admitted that, as a result of the claim of Phelps, that he had been injured, the employer caused him to be examined and treated by various physicians and surgeons and that it, the insurer of the Ferran Company, had paid to Phelps compensation in the sum of $30 per week for 12 weeks. It averred too that, at the end of that time, it was ascertained that plaintiff had, in fact, sustained no injury and that he could return to work, and that compensation payments had been discontinued.
At the beginning of the trial in the District Court the District Judge asked: "* * * what is the nature of the injury claimed?" Counsel for plaintiff answered: "Ruptured intervertebral disc severe, lumbar cervical spine." Shortly thereafter the District Judge asked: "Is there any issue of post-traumatic neurosis?" Counsel for defendant, in the presence and hearing of counsel for plaintiff, answered: "No, sir, claim was ruptured intervertebral disc." Counsel for plaintiff apparently concurred *226 in this statement, for he made no comment or protest and the Judge said: "OK" and proceeded with the trial of the case, the sole issue as to the nature of plaintiff's injury being whether plaintiff had sustained a ruptured intervertebral disc. At that time there was no claim nor even suggestion that he was suffering from post-traumatic neurosis.
Very little evidence concerning the occurrence of an accident was introduced by either party, since the defendant based its principal defense on the contention that plaintiff was malingering and that even if there had been any such accident the plaintiff was not injured and had not suffered the rupture of the intervertebral disc.
Much medical testimony was introduced and by an overwhelming preponderance it showed that there had been no such disc rupture. No good purpose would be served by a detailed discussion of the evidence on this question. We are in full accord with the finding of the District Judge who, in his reasons for judgment, said:
"I must conclude that plaintiff does not have a herniated ruptured disc. It is not a question of counting the medical experts on one side or the other, even though the ratio is five to one against plaintiff. The medical testimony of defendant seems convincing and corroborates the overall picture of the case. However, to resolve every opportunity in favor of plaintiff, since there is a very remote possibility that he may suffer an injury other than a herniated discthough none other is pleadedI appointed Drs. Accardo and Battalora, orthopedists, to examine plaintiff and report to the Court, subject to the right of either party to cross-examine the doctors in open Court if they desire.
"The reports of Drs. Battalora and Accardo are to the unequivocal effect that plaintiff is only pretending and does not suffer the disability claimed."
After all of the evidence on the question of the rupture of the disc had been submitted and the District Judge had indicated his view that there had been no such injury and he had stated that, in order to make assurance doubly sure he would appoint the two named orthopedic surgeons, counsel for plaintiff sought and obtained from the District Judge permission to file a supplemental petition, and, in this supplemental petition, plaintiff alleged that the real cause of his disability was "post-traumatic neurosis" and that his present total disability results from this.
Objection which was made to the filing of this supplemental petition was overruled and the case was then re-opened for further evidence on the question of whether plaintiff is suffering from post-traumatic neurosis. There was then introduced the testimony of three psychiatrists, one of whom believes that plaintiff is not suffering from neurosis and two of whom believe that he is so suffering. The District Judge then rendered judgment dismissing plaintiff's suit and from this judgment plaintiff has appealed.
In oral argument before us and in their briefs, while counsel for plaintiff did not abandon the claim that plaintiff had sustained a ruptured intervertebral disc, they devoted no attention to that claim and focused their attack on the conclusions of the District Judge which were based on his findings that plaintiff's claim that he is now suffering from post-traumatic neurosis is not well founded.
Concerning this new claim which was presented for the first time in the supplemental petition, the District Judge said:
"Regarding the supplemental defense of post-traumatic neurosis, there is no basis for this defense, and impresses me as nothing more than a last-minute afterthought."
We quote further from the reasons for judgment:
"* * * before there can be any recovery for a post-traumatic neurosis, there must first be proof that the employee actually suffered an injury or a shock of sufficient intensity to cause *227 brain or nerve injury. Plaintiff did not suffer an injury nor was the accident such as to have caused a shock to the brain or nervous system. Any neurosis which plaintiff may have at this time highly doubtfulcannot be said to be post-traumatic the accident. If he has such a neurosis it is from some other cause. To permit recovery in such a case as this would be permitting recovery for simple thoughttrauma."
This statement is vigorously attacked by counsel for plaintiff who say that disabling post-traumatic neurosis or hysteria may result even where the actual physical injury is very slight, and in fact even though there may be no actual physical injury; that where there is an accident or an unusual occurrence under circumstances which cause the justifiable belief of grave danger of physical injury there may result fright so great as to result in disabling hysteria and that disability may result just as effectively as though there had been actual physical injury.
In Lala v. American Sugar Refining Co., La.App., 38 So.2d 415, 421, in which writs were denied by the Supreme Court, we considered a case in which the employee had recovered from the physical injuries but contended that he was permanently, totally disabled because of the "nervousness, neurosis, or emotional disturbances" which had been "superinduced" by the injuries. We held that such a condition
"can be just as devastating to the ability to return to work as are physical or anatomical injuries, and are equally as compensable under the statute."
In Schneider's Workmen's Compensation Law, Volume 1, section 204a, appears the following:
"Even though an accident may not produce anatomical pathology, nevertheless if the workman does in fact become disabled as a result of that accident, the injury is compensable, although such disability may be the result of hysteriaand may be traceable to a mental condition and not a physical disorder."
See, also, Vaughn v. Solvay Process Co., La.App., 176 So. 241, and Wilkinson v. Dubach Mill Co., Inc., 2 La.App. 249.
In Klein v. Medical Building Realty Co., Inc., La.App., 147 So. 122, 125, we found a case in which the plaintiff claimed to have been injured by falling plaster. We concluded that, though the plaster had fallen, the plaintiff (Klein) "was either not struck by it, or, if struck, the blow was so slight that it did not cause any physical injury * * *." We said that there may be recovery for post-traumatic hysteria, even where there has been no actual physical injury, and we distinguished between traumatic neurosis "where the patient has suffered physical or organic injury, resulting in a nervous condition, * * *" and traumatic hysteria which "results from mere fright, unaccompanied by physical or organic injury" and which therefore is "merely psychic or functional; * * *." We held that where there is such a result, brought about by accident, there may be recovery.
From this and from what the experts have said we conclude that the extent of the physical injury is not the criterion from which it may be determined whether neurosis or hysteria has resulted from some unusual occurrence, and that, even where there has been no physical injury, there may be hysteria from which disability may result.
And if this record contained no evidence except that which was offered by the three psychiatrists who testified after the case was reopened, we might have difficulty in agreeing with the finding of the District Judge who said that the record contained no evidence that the plaintiff suffered "an injury of sufficient intensity" to cause neurosis or hysteria and that there should be no recovery.
If we had before us only the evidence of the three psychiatrists, we would find it *228 difficult to determine from that evidence that the opinion of the one should prevail over the opinions of the other two, but from the record as a whole we conclude, as did the District Judge, that this claim is "a last minute after-thought," and that plaintiff is a malingerer and sustained no injury of any kind in any accident which occurred on March 24, 1953. However, it is interesting to note that not one of three psychiatrists who testified found any lesions or objective evidence of physical injury, although two who testified on behalf of plaintiff concluded that plaintiff was suffering from post-traumatic hysteria or neurosis. The psychiatrist who testified on behalf of defendant concluded that he was not so afflicted and that he was a malingerer.
We cannot overlook the very significant fact that during the entire first trial no mention was made of post-traumatic neurosis except that it was said that there was no claim that plaintiff had sustained any such neurosis and that his entire case was based on the contention that he had suffered a ruptured intervertebral disc. Nor can we overlook the fact that the evidence given during the trial indicated plainly that plaintiff was a malingerer and resorted to various shams in his effort to deceive the doctors into believing that he had been physically injured. Five doctors found no evidence of the injury of which plaintiff complained and three, including a neurologist, were of the opinion that he was a malingerer.
In view of the fact that, throughout his testimony, the plaintiff evidenced a complete unwillingness to tell the truth and, on several occasions, found himself enmeshed in a mass of contradictions of his own making, we can reach no other conclusion than that he was malingering and that his so-called neurosis or hysteria would miraculously disappear upon the rendition of a favorable decree.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.