100 So.2d 533 (1958)
Felix ETIENNE
v.
ALGERNON BLAIR, Inc., and The Travelers Insurance Company.
No. 21018.
Court of Appeal of Louisiana, Orleans.
January 6, 1958.
Rehearing Denied March 3, 1958.
Writ of Certiorari Denied April 21, 1958.
*534 C. Cyril Broussard, New Orleans, for plaintiff and appellant.
May & Carrere, E. A. Carrere, Jr., New Orleans, for defendants and appellees.
REGAN, Judge.
Plaintiff, Felix Etienne, a common laborer, instituted this suit on November 21, 1955, against defendants Algernon Blair, Inc., his employer, and The Travelers Insurance Company, its insurer, endeavoring to recover workmen's compensation in the sum of $30 per week for a period of 400 weeks, subject to a credit of sixteen days. In his petition plaintiff asserted that he was totally and permanently disabled as the result of a lumbosacral strain incurred by him in the course of his employment on June 23, 1955, when he attempted to prevent a pile of lumber, which he was stacking, from falling to the ground.
Defendants answered and denied that the plaintiff was suffering from any disability whatsoever, and therefore he was not entitled to any more compensation than he had already been paid.
On January 23, 1957, or approximately fourteen months after the original suit had been instituted, plaintiff filed a supplemental petition in which he asserted that he had been examined by two psychiatrists who respectively disclosed that he had sustained "a lumbosacral strain with psychic overlay" and that he "is now suffering from traumatic neurosis."
Apparently the defendants were satisfied to rely on the efficacy of their original answer to plaintiff's supplemental pleadings since no further answer appears in the record on their behalf.
From a judgment in favor of defendants dismissing plaintiff's suit, he has prosecuted this appeal.
It is conceded by the litigants that only a question of fact is at issue herein, and that is whether the plaintiff is afflicted with a post-traumatic neurosis as the ultimate effect of the accident pleaded in his original petition.
The trial judge made a thorough analysis of this question in his written reasons for judgment which, in our opinion, fully encompassed the subject posed for our consideration and the result which we have agreed should be reached.
"Plaintiff sued his former employer, and its compensation insurer, for four hundred (400) weeks compensation, on November 21, 1955, alleging only that he injured his back while handling lumber. Nothing was said of any mental, psychological, or neurotic symptoms. On January 23, 1957, plaintiff amended his petition to allege that he is `now suffering from traumatic neurosis.'
"Plaintiff did sustain an injury to his back and was promptly sent to *535 Dowman Road Clinic, where he was treated by Dr. Pardue, who sent him to Dr. Battalora, Orthopedic Specialist. Dr. Battalora gave him a corset to wear for ten days, and then released him to return to his former employment, stating that plaintiff was greatly exaggerating his complaints.
"In August, 1955, defendant had plaintiff examined by Dr. Soboloff, Orthopedic Specialist, who also testified that, orthopedically, plaintiff was fully able to return to his former employment. To give plaintiff the benefit of doubt, Dr. Soboloff suggested a neurological examination, which was performed by Dr. Karr, who reported that plaintiff had no positive findings, and was able to return to his former employment.
"All of these doctors testified that plaintiff had no limitation of motion in the back and no muscle spasm.
"On August 2, 1955, Dr. Accardo, plaintiff's own Orthopedist, found some disability in the back, and estimated it would continue for twelve (12) weeks. Dr. Accardo did not see plaintiff again until March 28, 1956. He testified unequivocally that, at that time, plaintiff was well able to return to work; that he had no limitation of motion in his back, no muscle spasm, no sign of sprain, and no sign of any psychological trouble, which would have prompted an experienced doctor to send him to a psychiatrist.
"Two of plaintiff's fellow-workers (Simon Thomas and Louis Picquet) both testified they had known plaintiff practically all of their lives; that plaintiff had worked with them for Martin Construction Company at $1.50 per hour for a period of time longer than 1½ weeks. Plaintiff admitted he had worked for Martin Construction Company after he left defendant, Blair's, employ.
"These witnesses further testified that plaintiff had worked for Horace Williams, as a common laborer, from September 5, 1956, through January 23, 1957, when plaintiff and the entire crew he worked with were fired as a result of a labor incident which occurred on the job, not due to plaintiff's inability to perform laboring work.
"Dr. Gene L. Usdin, psychiatrist, who examined plaintiff on December 14, 1956, and on January 4, 1957, as plaintiff's own doctor, stated that plaintiff could not do heavy physical labor; that plaintiff should be given assurance that he could expect recovery from his injury; and that an early settlement would be beneficial to plaintiff; that he did not examine plaintiff physically, but felt he had a neurosis because he did not see any reason to believe plaintiff would be a malingerer, and because he had manifested a limited interest in outside activities.
"Dr. Paddison, Psychiatrist and Neurologist, stated he examined plaintiff on September 15, 1955, and found the prognosis to be good. He examined him on November 1, 1955, and found plaintiff could do light work. He examined plaintiff a third time on January 9, 1957, and found muscle spasm and limitation of motion. His diagnosis was that plaintiff suffered from a neurosis, and based this diagnosis on the fact plaintiff seemed `sincere in his disability.'
"Both of these doctors were asked to produce their entire records; which failed to show that they made any tests on plaintiff, or that they had the benefit of any medical data or supporting evidence to prove plaintiff was suffering from a neurosis. Dr. Paddison readily admitted he made no tests on plaintiff, and, in fact, made no examination to determine whether the alleged muscle spasm and limitation of motion was voluntary or involuntary.

*536 Neither doctor had the opportunity to view the motion pictures of plaintiff working, and neither had the benefit of any investigation or check on the activities of plaintiff. They both accepted at face value and without question what plaintiff told them.
"Motion pictures of plaintiff taken on the Martin Construction job were shown in court. They show plaintiff doing laborious work normally and without any effort to guard his motions.
"The law in compensation cases is that plaintiff must prove his case by a preponderance of the evidence. This he has failed to do. Four eminent doctors, Battalora, Soboloff, and Karr, for defendant, and Dr. Accardo, for plaintiff, all testified that plaintiff was properly treated; that he could return to his former employment; and that he had absolutely no medical evidence of any disability, and certainly, no muscle spasm or limitation of motion caused by injury. They stated that if he had any limitation of motion in the back, it was simulated or volunteered.
"The evidence given by Drs. Paddison and Usdin is inconclusive and not based on medical tests and procedure, since no tests were made by these doctors; and are merely opinion evidence based solely on their naked belief of what plaintiff told them. These assumptions are not in accordance with the true facts as disclosed by the evidence, and should be disregarded, under authority of Mouton v. Gulf States Utilities Company [La.App.], 69 So.2d 147, 151, where the Court said:
"`The record does not disclose, in the least bit, that the alleged fuse explosion was of such a nature as related to Dr. Butterworth by petitioner. Aside from any objection by defendant to the testimony of Dr. Butterworth, we believe that the story of the incidents given him by petitioner were exaggerated to such an absurd extent as to render the value of Dr. Butterworth's testimony absolutely nil. Dr. Butterworth's testimony was based on two question and answer periods of about 45 minutes duration each, held in his office. His findings were based on the incidents as related to him by petitioner.'
"This case is very similar to Phelps v. Royal Indemnity Company [La. App.], 77 So.2d 225, decided by me and affirmed on appeal. In that case plaintiff sought to prove he had a herniated disc and, being unable to do so, amended his complaint to allege post-traumatic neurosis. The Court of Appeal quoted my findings in part, viz.:
"`Regarding a supplemental defense of post-traumatic neurosis, there is no basis for this defense, which, impresses me as nothing more than a last-minute afterthought.'
"Certainly, the evidence in this case, and particularly the motion pictures, proved that plaintiff can work, has worked, and will work as soon as this case is decided. * * *"
For the reasons assigned the judgment appealed from is affirmed.
Affirmed.