113 So.2d 820 (1959)
Collie CORRAL, Plaintiff-Appellant,
v.
CRAWFORD HOMES, INC., et al., Defendants-Appellees.
No. 4853.
Court of Appeal of Louisiana, First Circuit.
June 30, 1959.
Bryant W. Conway, Baker, for appellant.
Taylor, Porter, Brooks, Fuller & Phillips, Robt. J. Vandaworker, Baton Rouge, for appellees.
Before ELLIS, LOTTINGER, and TATE, JJ.
*821 TATE, Judge.
Plaintiff claims compensation for total and permanent disability by this suit against his former employer and its compensation insurer. This appeal is from dismissal thereof.
The plaintiff sustained a moderately severe low back muscle sprain while at work on November 14, 1957. He was treated and paid workmen's compensation at the maximum rate through February 27, 1958, or for 15 weeks; following which the attending physician felt that plaintiff was completely cured. Plaintiff's suit is based upon his complaint of residual continued disability following said date.
Without detailed discussion, we will simply state that the preponderance of the medical evidence in the record proves that there is no organic basis for plaintiff's continuing complaints of pain across his back and down his leg, the alleged residual from the accident.
The principal question of this appeal, therefore, concerns whether the trial court erred in holding that plaintiff has failed to prove a continuing residual disability by reason of a traumatic neurosis resultant of the accident.
As Judge Hardy stated for our brothers of the Second Circuit, in his masterful summation of the jurisprudence and governing principles regarding disability by reason of neurosis or hysteria in Miller v. U. S. Fidelity & Guaranty Co., La.App., 99 So.2d 511, at page 520, "* * * a disability is nonetheless real because its causation is imaginary. The test [of compensability] is whether the employee is sincere in his belief that he suffers a disabling resultant of a real injury."
The trial court held that plaintiff had not proved that his complaints were genuine rather than consciously simulated for several reasons:
The attending physician who saw and treated plaintiff many times during the 13 weeks following the accident and until he discharged plaintiff as cured, felt strongly that from the start plaintiff was not sincere and was consciously and grossly exaggerating all of his complaints, which were inconsistent and variable. An orthopedist who examined him during this time also felt that the plaintiff was consciously exaggerating and simulating pain and restriction. Another orthopedist examining plaintiff in October of 1958 also felt that plaintiff was not disabled and that he was "primarily exaggerating his complaints."
The trial court further pointed out the unexplained failure of the plaintiff to call as witness his own family physician, whom he admitted having been examined and treated by during the interval between the accident and the trial, and who perhaps was the only medical witness who might have compared plaintiff's mental and physical condition before and after the accident in question.
The District Judge further from his own personal observations noted that, during the day-long trial and on his two appearances on the stand, the plaintiff did not limp or hold his left leg stiff, the further notation being made in the transcript that plaintiff carried a cane in his left hand; whereas one of the two doctors testifying that plaintiff was disabled based his diagnosis of disability upon plaintiff's consistent limp with the left leg locked, using the cane for support in the right hand. The District Court also stated that although according to the testimony of plaintiff's psychiatrist (the other doctor testifying that he was disabled) this claimant was disoriented, emotional and greatly preoccupied with his incapacity at the time of his single psychiatric interview upon which the diagnosis of neurotic disability was founded, during the court's observations of the plaintiff during the trial and while he was on the witness stand the court's "definite impression that he was the calmest person present. He was interrogated and cross-questioned and during all of it he was completely composed * * *."
*822 In summary, the District Court stated: "* * * My observation of this plaintiff and the evidence in this case convinced me that there is very little, if anything, the matter with him. On the day of the trial he carried a walking stick, but it was obvious that he put no support on it for walking. He walked slowly, but there was no actual limp. He was called to the witness stand twice during the trial and in making steps the normal bend in his right hip and knee was no different from the bend in the use of his left leg."
Nevertheless, as able counsel for plaintiff points out, the uncontradicted testimony of the only psychiatrist testifying is to the effect that plaintiff is disabled from working by a traumatic neurosis resulting from the accident at work. This disability is alleged to be corroborated by the uncontradicted lay testimony of five friends or former work associates to the effect that before the accident plaintiff was a normal working man but thereafter does not perform any work but walks with a cane counsel reminding us that uncontradicted lay testimony should be accepted as true and not stigmatized as perjured in the absence of compelling reason.
Counsel relies upon such cases as Miller v. U. S. Fidelity & Guaranty Co., La.App. 2 Cir., 99 So.2d 511; Mamon v. Farnsworth & Chambers Construction Co., La. App. 1 Cir., 86 So.2d 764; Tate v. Gullett Gin Co. & Liberty Mut. Ins. Co., La.App. 1 Cir., 86 So.2d 698.
These cases do, as counsel points out, concern instances where the cited principles were applied in reversing dismissals by the trial court of claims for compensation based upon work-caused traumatic neuroses. But the reversals therein involved primarily the misapplication by the trier of fact of incorrect legal principles to the facts found (such as holding that recovery could not be based upon purely subjective symptoms and complaints, see Miller case; or that the claimant's condition, as defined by the psychiatrist, was not compensable, see Tate case). In the Mamon case, for instance, the vast preponderance of the medical evidence (the testimony of five doctors) and strong lay evidence indicated that the plaintiff was sincere in his complaints and manifested external symptoms of pain, the sole contradictory evidence being that of two physicians who had treated the claimant within a month of the accident and 18-24 months before the trial and who of course were not in a position to testify as to the subsequent development of the neurosis.
These cases are thus to be distinguished from the present, where the preponderance of the medical evidence is to the effect that the plaintiff was insincere in his complaints, and where the trier of fact made a specific finding as to the lack of credibility and conscious simulation by the claimant based upon his own detailed observation thereof during the trial.
It is true, as counsel contends, that there are general expressions in the jurisprudence to the effect that the opinions of medical specialists within the field of their specialty should be accorded greater weight than that of other doctors. But such a principle, similarly to that sometimes expressed to the effect that lay testimony as to disability will not be considered in the absence of conflict in the medical testimony, must be given a common sense construction and not erected into an artificial and ironclad rule preventing the trial court from making an independent evaluation of the credibility of the claimant and reaching a factual conclusion based upon all the evidence in the record, lay and medical.
A medical degree or medical specialization does not necessarily confer upon a physician a special insight as to the veracity of a claimant in describing his own pain. Nor does such a physician, in the usually short periods of time for treatment and observation of a claimant in the midst of attending to many other patients, generally have the perspective of the trier of fact, which is able to evaluate the genuineness *823 of the complaints based upon sworn medical and lay testimony covering a course of conduct over an extended period of time.
Of course, the skilled opinion of the physician, based upon the claimant's response to recognized tests or otherwise, may be of material assistance to the trial court in what is ultimately its responsibility, rather than that of the medical witnesses an evaluation of the sincerity and truthfulness of the claimant. And the opinion of a medical specialist within his field should properly control as to whether there can be a relation between the disability complained of and the industrial accident, or as to whether there can be an organic or psychiatric basis for plaintiff's complaints, if same are accepted as genuine.
But although the testimony of the medical specialist may well be determinative as the medical limits and possibilities of any work-caused disability, insofar as the ultimate conclusion of the medical witness as to a claimant's disability is based upon his own evaluation of said claimant's sincerity, the trial court is free to consider and accept other medical and/or lay testimony and reach a differing ultimate conclusion as to the sincerity or not of the claimant's complaints of pain.
Thus, an orthopedist may say that if plaintiff's complaints are genuine he is disabled by a ruptured disc, but conclude that such complaints are not genuine and that therefore plaintiff is not disabled. And the court may, considering all the evidence in the record, nevertheless properly reach an opposite conclusion as to the plaintiff's credibility and hold that because there is genuinely felt pain, therefore under the diagnosis of the orthopedist (upon assuming the pain to be genuine) there is a compensable disability.[1]
Similarly, in the present instance the psychiatrist (who saw plaintiff but once and then four days before the trial in December, 1958) and the general practitioner (who examined plaintiff just twice, the first time 11 days before and, then, the day before the trial), admitted that ultimately their conclusion of disability was founded upon their acceptance of plaintiff's complaints as sincere. We cannot say that the trial court committed manifest and reversible error in refusing to accept such testimony, upon its own finding that the essential predicate upon which these medical conclusions were basedplaintiff's sinceritywas incorrect: since the trial court's finding was based upon substantial evidence in the record contradictory of these physicians' assumption of plaintiff's sincerity; and also upon sound and detailed reasons based upon its own observation of the claimant during the trial and on the stand, specifically set forth for the benefit of the appellate court.
We share the trial court's opinion that the corroborating lay testimony produced upon behalf of plaintiff was not impressive. None of these lay witnesses with one exception (a neighbor who lived across the street from the plaintiff for part of the time) was shown to have had the opportunity for sustained observation of plaintiff's condition subsequent to the accident and comparison thereof with his prior working ability. Such testimony in some instances was limited to the observation that they saw plaintiff walking with a cane after the accident.
*824 In conclusion, however, able counsel for plaintiff should be commended for the efforts and expense to which he went, proceeding evidently from a sincere belief on counsel's part that his client is indeed disabled as a result of the accident, to secure medical examination and diagnoses of plaintiff's condition and to present same, favorable and unfavorable, for the consideration of the court.
For the reasons assigned, the judgment of the district court dismissing plaintiff's suit is affirmed.
Affirmed.
NOTES
[1] Cf. Dixon v. W. Horace Williams Co., La.App., 8 So.2d 724, at page 727: "There are numerous cases where the courts have held that compensation will be granted on the testimony of the plaintiff alone where his testimony is consistent and there is nothing to indicate that his claim is false or exaggerated. We adhere to the principle that great weight must necessarily be given to the statement of the claimant where there is little other available evidence as to the actual happening of the accident, and where the diagnosis and opinion of the doctor as to the nature and extent of the injury must depend largely on subjective symptoms, if there is nothing in the record to doubt the veracity and honesty of the plaintiff."