GLADNEY, Judge.
This is a workmen’s compensation suit brought by Otis L. Litton, and arises out of an employment accident which occurred November 13, 1959. Made defendant is London Guaranty and Accident Company, the compensation insurer of Allen Bros. Construction Company. From a judgment awarding compensation of $35 per week, not to exceed four hundred weeks, and medical expenses in the sum of $826, but rejecting plaintiff’s demands for statutory penalties and attorney’s fees, both parties have appealed.
Plaintiff alleges that on the date aforesaid he was engaged in construction work as a pipe fitter at a wage of $3.45 per hour for a forty hour week, and while engaged *859 in picking up a heavy piece of pipe, he stepped into . an uncovered hole the full length of his right leg and thereby sustained injuries to his right heel, hip, thigh and groin. More particularly, he asserts that his injuries are totally and permanently disabling and consist of “orchitis epididymitis, back and leg pain with numbness of the right heel, pain in the right thigh, injuries to his spine with particular injury to the lumbo-sacral region, with a lumbo-sacral sprain, traumatic neurosis and general damage and injury to the entire nervous and spinal system.”
Immediately following the accident plaintiff was given treatment by Dr. R. E. Braswell, and three days later returned to his work where he remained on the job until December 18th, at which time he was separated from his job as a result of completion of the work. During this period of employment he was paid regular wages amounting to approximately $130 per week.
The trial in the lower court was commenced on March 7, 1961. Prior to that date plaintiff was treated or examined for evaluation purposes by two general practitioners, four orthopedic specialists, a urologist and a psychiatrist. After consideration of the findings and opinions of the medical witnesses, the judge a quo rendered his decision favorable to the plaintiff, indicating that he was controlled by Miller v. United States Fidelity & Guaranty Company, La.App. 2 Cir., 1957, 99 So.2d 511, wherein judgment was in favor of the plaintiff for compensation by reason of traumatic neurosis. Counsel for the employee herein urges this court to also recognize liability for disability from physical injuries.
It is not controverted that prior to the accident plaintiff was regularly employed at good wages but that after the accident of November 13th he has been unable to do other than light work, despite available employment. The record discloses plaintiff has persistently complained of leg and back injuries.
Chronologically, we recapitulate the findings and opinions of the aforementioned doctors.
Dr. Braswell saw plaintiff immediately following the accident and treated him until March 2, 1960. He made a general examination, including X-rays of the back and administered tetanus anti-toxin and a blood absorbent, enzyme. He found a severe contusion of the right thigh and because of complaints of pain, was of the opinion the patient sustained a possible tearing of the muscles in the leg and back, with a possible sacro-iliac sprain. He saw his patient more than twenty times, and did not discharge him on March 2nd. The doctor testified that the complaints concerning the back persisted and on January 30th he discovered a prostate condition which he was still treating at the time of his last examination. On March 15, 1960, Dr. Braswell advised the defendant insurer that it was his opinion the employee was able to continue his trade without any undue handicap. He testified he did not attribute the prostatitis to the accident.
On March 3, 1960, Litton was examined by Dr. Willis J. Taylor at the request of the defendant. After an orthopedic examination with X-ray evidence, the doctor concluded that convincing physical and X-ray evidence of the injury and disability were lacking. The examiner noted on the lateral aspect of the upper right thigh an “extra bursa — which measured about two inches in length and one and one-half inches in width, which was slightly fluctuant and which was apparently moderately tender to pressure.” Following his first examination he reached the conclusion the employee had no actual ratable disability and reported that considering the employee’s ability to return to work “that if he was. able to work after the injury that he was able to do so during the past two months, or the two months prior to examination.” Again on an examination held on February 7, 1961, the doctor found plaintiff still complaining of pain in his lower back and hip. He observed evidence of a recent boil on *860 the latera] aspect of the right thigh at the junction of the middle and lower one-third, which was covered by a bandaid dressing. On the latter examination the doctor was unable to justify Litton’s professed inability to resume his original employment. He testified, however, “It was further my thought that there was apparently some psychic overlay.”
On March 25th Litton went to see Dr. Vaughan, his family physician, who immediately placed him in the Schumpert Sanitarium. During a period of ten days hospitalization examinations were made by Dr. Campbell and Dr. King, who were associated with Dr. Vaughan. Dr. Vaughan and Dr. King continued to administer treatment until August 11th, and Dr. Campbell until September 12, 1960. Dr. Vaughan, an orthopedist, testified the patient was hospitalized for orchitis and epididymitis, pain in his back and legs, right heel and injured right thigh. His opinion was that Litton sustained an injury to his right thigh, which consisted of a tear of his right vastus lateralis muscle and that he tore his left lumbosacral ligament. On May 17th Dr. Vaughan thought the patient could return to his work, beginning with light exercise at first and gradually increasing his work load. He estimated permanent disability of ten to fifteen per cent of the body.
Dr. Campbell, a specialist in urology, repeatedly examined plaintiff until September 12, 1960, at which time he expressed the opinion that so far as the prostate trouble was concerned, the patient could at that time return to his normal work and perform manual labor. It is of significance that Dr. Campbell was the only urologist who testified the prostate trouble was precipitated by the accident. He gave a firm opinion .in this respect.
Dr. King, an orthopedist, who treated Litton until August 14, 1960, diagnosed a partial tear of the right lumbar ligament. He administered muscle relaxants and deep therapy to the right hip and lower back and testified his patient was benefitted from wearing some support to his low back. As of April 14th the doctor opined that the patient was experiencing only mild pain on palpation over the right ilio lumbar angle and there was no indication of a disc injury, and he thought that the patient could return to light work and gradually increase his work load. He assessed fifteen per cent disability of the body as a whole.
Other examinations were made by Dr. E. C. Simonton, an orthopedist, as of February 10, 1961, and by Dr. J. H. Eddy, Jr'., a general practitioner, as of December, 1960. The examinations of these doctors were essentially negative in character.
As above noted, this cause was tried on March 7, 1961. On the previous Friday, March 3, 1961, the plaintiff was sent to Dr. Erie W. Harris, a psychiatrist. This was. the only time the doctor examined plaintiff. The examination was for the purpose of evaluation only, and not for treatment. Dr. Harris testified the visit lasted for about one and one-half hours and his examination consisted of questions and answers, at the conclusion of which he concluded Litton was suffering from a form of hysteria, termed traumatic neurosis or conversion reaction, which words he used interchangeably. He considered plaintiff totally and permanently disabled as a result of the neurosis and it was his opinion that his condition was precipitated or occasioned by the employment accident.
Counsel for the defendant complains, in effect, that although the original complaint alleged a condition of traumatic neurosis, it was prejudiced in its defense, for neither plaintiff nor his counsel pretended to rely on such disability during the months of preparation for the trial, and it was not until four days prior to the opening day of trial that the issue of neurosis was injected into the case. We agree, of course, that defendant had no opportunity in such a limited time to rebut the testimony of Dr. Harris.
*861 Counsel urges with merit that the proof of disability from traumatic neurosis has not been adequately proven. The position is set forth in its brief. It is that:
“A workmen’s compensation claimant, who primarily claims to be physically disabled, but who * * * is sent to a psychiatrist by his lawyer three days before trial, and the psychiatrist testifies that the claimant has a traumatic neurosis, has failed to establish his case by a preponderance of the evidence.”
In support of this proposition, reliance is placed upon the following authorities: Phillips v. Underwriters at Lloyd’s of London, La.App. 1st Cir., 1961, 128 So.2d 318, certiorari denied May 12, 1961; Corral v. Crowford Homes, Inc., La.App. 1st Cir., 1959, 113 So.2d 820; Etienne v. Algernon Blair, Inc., La.App. Orl. 1958, 100 So.2d 533 certiorari denied April 21, 1958; and Mouton v. Gulf States Utilities Company, La. App. 1st Cir., 1953, 69 So.2d 147.
These authorities denied disability claims based on traumatic neurosis on the ground proof was insufficient to sustain such a finding. In each of the cases the extent, duration and nature of the examinations administered was carefully considered, and the opinion held unsupported by substantial evidence.
In Mouton v. Gulf States Utilities Company the employee therein was examined by Dr. Butterworth, a psychiatrist, who said his opinion was based solely upon two question and answer periods of about forty-five minutes duration each, held in his office. His conclusion assumed the truth of incidents as related to him by petitioner. The court observed that some of the incidents referred to were not true facts or were exaggerated and consequently rendered the value of the doctor’s testimony worthless. The decision held plaintiff had not established his disability by a preponderance of the evidence.
In Etienne v. Algernon Blair, Inc., supra, two psychiatrists testified plaintiff was disabled from traumatic neurosis. One of these doctors, Dr. Gene L. Usdin, rested his opinion on his belief that plaintiff was not a malingerer and had manifested only a limited interest in outside activities. The opinion of Dr. Paddison, psychiatrist, was based principally upon a finding that plaintiff seemed sincere in his disability. Neither one of the witnesses produced records, nor did they profess to have made any test on plaintiff, nor did they admit they had studied any medical data or supporting evidence to prove that plaintiff was suffering from a neurosis. The court found the evidence was inconclusive as .not being substantiated by proper medical tests and procedure, but each medical opinion rested simply upon a naked belief in what plaintiff said. The court was also of the opinion that the assumption of the medical examinations was not in accordance with true facts as disclosed by the evidence and should be disregarded.
Corral v. Crawford Homes, Inc., supra, presented another case where disability was claimed on the grounds of traumatic neurosis, and the court held the evidence therein to be insufficient. Evidence of the neurotic condition was based on the uncontradicted' testimony of a single psychiatrist, corroborated by the uncontradicted lay testimony of five friends or former work associates to the efiect that before the accident plaintiff was a normal working man, but thereafter did not perform any work. The court noted that the psychiatrist had seen the plaintiff only once and then four days before the trial. The lay testimony was found to be not impressive.
The most recent case in which proof of traumatic neurosis was found to be inadequate to establish the disability complained of, is Phillips v. Underwriters at Lloyd’s of London. In that case the only psychiatric examination occurred one week, prior to trial and consisted of a question; and answer period lasting approximately-one and one-half hours. The court observed- as to the diagnosis of the doctor:
*862 “Conceding that the results of his examination were entirely negative he nevertheless concluded plaintiff was suffering from post traumatic neurosis frankly conceding the diagnosis was predicated solely and entirely upon subjective symptoms related to him by plaintiff. Relying upon plaintiff’s narration of insomnia, diminished appetite, decreased sexual interest and loss of weight, he concluded plaintiff was afflicted with post traumatic neurosis to the extent of producing total disability. The record also shows that the symptoms related to Dr. Blood were corroborated by several of plaintiff’s friends and acquaintances who'testified in substance that prior to the accident plaintiff was active, energetic and amiable but that after the accident he became listless, disinterested and changed completely.” [128 So. 321.]
It then commented:
“ * * * the problem at hand is whether the testimony of Dr. Blood standing alone (except for confirmation by lay witnesses of plaintiff’s narration of symptoms such as loss of appetite and weight, etc.) are sufficient to support plaintiff’s allegations in this regard.
“We believe the instant matter is controlled by the line of jurisprudence established in Mouton v. Gulf States Utilities Company, La.App., 69 So.2d 147; Phelps v. Royal Indemnity Company, La.App., 77 So.2d 225; Etienne v. Algernon Blair, Inc., La.App., 100 So.2d 533; Rowan v. Travelers Insurance Company, La.App., 111 So.2d 387 and Corral v. Crawford Homes, Inc., La.App., 113 So.2d 820. Indeed the case at bar is remarkably similar to the Mouton case, supra, in which it was held that the testimony of a psychiatrist, predicated on history narrated by plaintiff in two question and answer periods lasting 45 minutes each, did not constitute proof of traumatic neurosis by a clear preponderance of the evidence. We further observe that in the Phelps case, supra, that dismissal of a plaintiff’s action predicated upon neurosis was upheld where two of three psychiatrists testified plaintiff was afflicted with such malady but the remaining expert was of a contrary opinion and the medical doctors found no evidence of physical injury. In the Etienne case, supra, we observe that the testimony of two psychiatrists was considered insufficient to establish disability from neurosis where such diagnoses were predicated solely upon subjective symptoms related by plaintiff. Finally, we note that in the Corral case, supra, this court affirmed the judgment of the trial court which rejected a similar contention supported only by the testimony of a single psychiatrist who examined plaintiff on one occasion four days prior to trial and rendered a diagnosis based exclusively upon a history related by plaintiff.”
Counsel for the employee rely upon Miller v. United States Fidelity & Guaranty Company, supra, and Williams v. Bituminous Casualty Corporation, La.App. 2d Cir., 1961, 131 So.2d 844, recent decisions of this court. We are of the opinion the holdings in these cases are to be distinguished from Phillips v. Underwriters at Lloyd’s of London, Corral v. Crawford Homes, Inc., Etienne v. Algernon Blair, Inc., and Mouton v. Gulf States Utilities Company, referred to above.
In the Miller case Dr. Davidson Texada, a specialist in neurology and psychiatry, examined Miller on June 11, 1956, and again on September 20, 1956, shortly before the trial of the case on September 25th. There was no rebutting testimony, but some other corroborating circumstances, including the testimony of a number of lay witnesses. In the Williams case the plaintiff was examined by Dr. Erie W. Harris on May 25, 1960, and again on October 20, 1960, the day before the trial of the *863 case. There was no attempt to contradict the findings of Dr. Harris, although the defendant had knowledge of the “conversion reaction” diagnosed by Dr. Harris for approximately six months prior to trial. Again in this case circumstances supporting Dr. Harris’ opinion were found.
We think it is of significance that plaintiff had a prior excellent work record, has persistently complained of disability resulting from the accident, and has substantial supporting evidence to confirm a condition of total disability from his physical injuries until September 12, 1960, if not later. The district court made no specific finding that plaintiff was physically disabled to carry on his work subsequent to the accident, although it is our opinion without necessarily determining the duration of total disabilitty, that plaintiff was physically disabled to perform the regular duties of his work at least until September of 1960. The record reveals that he was paid no compensation during this period of time. It is also our opinion that plaintiff has failed to establish a total and permanent disabling condition from traumatic neurosis due to the insufficiency of the examination upon which the diagnosis was made. Further, we hold defendant was prejudiced in its defense as it was not informed plaintiff intended to rely upon the evidence of a psychiatrist and afforded thereby an opportunity to present possible contradictory evidence.
For the foregoing reasons and in the interest of justice, the judgment from which appealed is hereby annulled, and set aside, and a new trial is hereby ordered, and the cause remanded for further proceedings not inconsistent herewith, and according to law. The costs of this appeal are to be assessed upon the rendition of a final judgment in this case.