AYRES, Judge.
By this action, plaintiff seeks to recover of his former employer and its insurer workmen’s compensation at the maximum statutory rate for total and permanent disability.
This action is predicated upon an accident of March 10, 1958, near Clinton, Iowa. As a result of the accident, plaintiff first claimed to have sustained personal injuries of a disabling nature. By an amended petition, plaintiff claims to have experienced, because of the accident, a conversion reaction or to have sustained traumatic neurosis. The trial court, obviously concluding that plaintiff had failed to establish his claims by a preponderance of the evidence, rejected his demands, and he has appealed.
The issues are entirely factual in character and are confined and related to the questions (1) as to whether plaintiff suffered a conversion reaction or traumatic neurosis; (2) if so, as to the causal relationship between the accident and such affliction; and (3), if so, as to whether plaintiff is disabled as a result thereof. Entwined with these questions is the further question, of primary importance, as to whether plaintiff has sustained the burden of proof by a reasonable preponderance of the evidence.
The facts of plaintiff’s employment and the occurrence of an accident are not in dispute. Plaintiff’s employment with The J. B. Beaird Company, Inc., as a truck driver began in Shreveport during October, 1956. He continued in this employment until the date of the accident. For a period of time prior to the accident, he had been operating from the corporation’s place of business in Clinton, Iowa. On the occasion of the accident, plaintiff was driving a truck and trailer combination unit on a mission from Clinton, Iowa, to Lenore, Kansas. Under difficult driving conditions, due to snow and ice on the highway, plaintiff lost control of his equipment. The trailer skidded, and the unit came to rest in a roadside ditch. In the aforesaid process, plaintiff was thrown to the opposite side of the cab, as a result of which he first claimed to have sustained bodily injuries, and, finally, to have become afflicted with a conversion hysteria.
Certain material facts are admitted or have been established beyond successful contradiction. To these, we shall make brief reference.
Soon after the accident, plaintiff was examined by Dr. James H. Taylor, an orthopedic surgeon of Clinton, Iowa. Dr. Taylor’s diagnosis was that plaintiff had sustained a muscle strain in his lower back. For observation and treatment, plaintiff was hospitalized for a period of four days. Dr. Taylor’s opinion, on discharging plaintiff from further treatment, on March 18, 1958, was that plaintiff would experience no permanent disability as a result of the accident.
Returning to Shreveport, plaintiff consulted Dr. J. C. Sanders who, after examination, made a diagnosis of lumbosacral strain. An x-ray examination by Dr, Sanders, as did the one made by Dr. Taylor, failed to disclose any evidence of injury. *591 Dr. Sanders’ opinion was that no permanent effect would result from the accident.
Hicks was next examined by Dr. Willis J. Taylor, an orthopedic specialist, who found his complaints almost entirely subj ective in character, but- he suggested continued observation and treatment on the basis of plaintiff’s complaints. A third x-ray examination was negative, and, after having observed and treated plaintiff on several occasions, Dr. Taylor discharged him, on July IS, 1958, as having fully recovered with no residual disability.
Upon referral by his attorney, Dr. Ford J. MacPherson, another orthopedist, examined plaintiff on July 22, 1958. Dr. MacPherson reported that plaintiff’s examination was completely negative and there were no objective findings to support plaintiff’s claim of discomfort. The doctor found no disability in plaintiff and was of the opinion plaintiff could return to his previous occupation without any disability whatsoever. Whatever injury plaintiff may have sustained in the accident had, in the doctor’s opinion, completely subsided on the date of his examination, and without any residual effects.
The aforesaid orthopedic examinations failed to indicate or establish any disability resulting from any alleged accidental injuries sustained by plaintiff.
However, on September 26, 1958, a neurological examination was conducted by Dr. Heinz K. Faludi, a neurosurgeon. At the time, plaintiff complained of pain in his lower back and right shoulder. The examination was negative. The doctor was of the opinion that plaintiff had not sustained any residual disability as a result of the accident.
Plaintiff, on October 16, 1958, applied for and obtained a job as truck driver for the Arkansas-Louisiana Gas Company. A pre-employment physical examination was conducted by Dr. M. C. Crandall, who found plaintiff physically acceptable for employment. Plaintiff, thus employed as a truck driver on a pipeline construction job in the State of Arkansas, worked and drove a truck for two months. His employment was terminated only because of the completion of the project.
A fourth orthopedic examination was conducted by Dr. Ray E. King on April 8, 1959. Notwithstanding that plaintiff complained of ■ pain in his back, Dr. King’s clinical and x-ray examinations failed to disclose any positive evidence to support the same.
Plaintiff, through counsel, concedes that, in view of the fact that the examinations of four orthopedic surgeons, a neurosurgeon, and a general practitioner failed to establish or to indicate that he had sustained any residual or permanent disability because of the personal injuries alleged to have been sustained in the accident, he must, of necessity, rely for recovery solely on the contention of disability as a result of traumatic neurosis or conversion hysteria.
A psychiatric examination was conducted by Dr. Andrew J. Mullen on October 30, 1959. This examination was essentially negative; there were no findings indicative of neurosis or conversion reaction. Pursuing the question further, Dr. Erie W. Harris conducted a second psychiatric examination December 29, 1959.
From the testimony of these specialists, traumatic neurosis or conversion reaction would appear to be an emotional disturbance directed to and impairing the sensory or muscular system of the body, manifested objectively in a great number of ways, such as, for example, by paralysis or trembling of the limbs or other portions of the body, and defects in vision.
Dr. Harris’ diagnosis was that plaintiff was suffering from a conversion reaction; that such condition resulted from the injuries sustained in the accident, and that plaintiff was disabled. This diagnosis and the opinion, however, were predicated upon the existence o,f facts elicited from plaintiff. In this regard, it may be pointed out that *592 many important facts, such as plaintiff’s subsequent employment, were not disclosed to the doctor and he had no knowledge of those facts at the time he made his examinations or arrived at his conclusions. The doctor frankly admitted that these facts would have had considerable bearing or influence upon his opinion, had he been informed of their existence.
We find this series of questions and answers in the doctor’s testimony:
“Q. You do not recall him telling you that he actually worked as a truck driver following his accident in March of 1958?
“A. No, I don’t.
“Q. Doctor, let us assume that on October 16, 1958, Mr. Hicks applied for a job at Arkansas-Louisiana Gas Company; that he represented that he was in good physical condition; that he denied any back injury; that he passed his pre-employment physical; ■that he worked as a truck driver for Arkansas-Louisiana Gas from October 16 to December 16, 1958; that during that period of time he worked seven days a week and averaged nine or ten hours a day. Assume further that he was required to make road trips covering distances of nearly 300 miles one way, and assume that he performed all of the work that was required of him as a truck driver for that period of time. Would that have any effect on your opinion of Mr. Hicks?
“A. Yes.
“Q. What effect would that have ?
“A. Well, it would, of course, raise the question as to why he was able to go back and then give it up. Further, one would wonder if he deliberately did not give that history at the time he was examined.”
The same facts were withheld from Dr. Thomas L. Young, a neurologist and psychiatrist who conducted an examination of plaintiff on March 16, 1960. Dr. Young found only one objective sign, or symptom, of conversion reaction in plaintiff; that was a lisp in his voice, with a failure to pronounce his “s’s” or to repeat, clearly and distinctly, complicated and intricate phrases, from which he concluded there was an impediment in plaintiff’s speech. This finding was not stressed and, frankly, we are not impressed with its importance.
Plaintiff’s own testimony is likewise most unsatisfactory, particularly as regards his denial of established facts related to his employment, to his examinations, and to prior injuries and the compensation received in their settlement.
Plaintiff’s expert testimony is, as heretofore stated, predicated upon his statements, the correctness of which was assumed by the experts. As pointed out in Keener v. Fidelity and Casualty Co. of New York, La.App. 2d Cir., 1957, 96 So.2d 509, 515:
“It is a cardinal rule that for an expert opinion to be of value the reality of the state of facts upon which such an opinion is predicated must be shown to exist. An opinion based on assumed facts, varying materially from the actual facts, is without probative value and is insufficient to sustain a judgment. Neither is a medical opinion entitled to weight which is predicated upon an incorrect assumption of facts. Bayless v. Jefferson Standard Life Ins. Co., La.App. 148 So. 465; Grober v. Grace Logging Co., 18 La.App. 185, 137 So. 613; 32 C.J.S., verbo Evidence, paragraphs c and d, § 569, pp. 396-401.”
It may he also pointed out that plaintiff’s possible anxiety with reference to the effect of the injuries purportedly sustained by him in the accident was not the only stress or strain imposed upon him, nor to which he was subjected during this interval of time. The record discloses not only that *593 he was concerned with matters economical but marital. His wife left him and eventually secured a divorce in Arkansas. Notwithstanding these marital difficulties, it may be appropriate to note the former wife, to her credit, returned and testified in his behalf on the trial of this case.
The law in compensation cases, as in other civil cases, is that a plaintiff must establish his claims by a preponderance of the evidence. For recovery, plaintiff’s reliance is placed primarily on the testimony of Dr. Harris. As previously observed, Dr. Harris accepted, at face value and without question, what plaintiff told him — and only what plaintiff told him, when the whole truth was not communicated. In such matters, opinions based solely on the belief in the truthfulness of what plaintiff has told the expert are entitled to little weight, and should, at the most, be received with extreme caution, if not entirely disregarded. Rowan v. Travelers Insurance Company, La.App. Orleans, 1959, 111 So. 2d 387; Etienne v. Algernon Blair, Inc., La.App. Orleans, 1958, 100 So.2d 533 (writs denied); Mouton v. Gulf States Utilities Co., La.App. 1st Cir., 1953, 69 So.2d 147.
It was held in Corral v. Crawford Homes, Inc., La.App. 1st Cir., 1959, 113 So.2d 820, 823, that there is no manifest error in refusing to accept such testimony predicated essentially upon a belief in plaintiff’s sincerity, where there is substantial evidence in the record contradictory of the assumption of plaintiff’s sincerity and truthfulness.
In Phillips v. Underwriters at Lloyd’s of London, La.App. 1st Cir., 1961, 128 So.2d 318, 322, it was held that the testimony of a psychiatrist, predicated upon history narrated by plaintiff in one question-and-answer period lasting one-and-a-half hours, did not constitute proof of traumatic neurosis by a clear preponderance of the evidence. A similar ruling was made in the case of Mouton v. Gulf States Utilities Co., supra, with reference to the testimony of a psychiatrist based upon two question-and-answer periods of 45 minutes each. See, also, Litton v. London Guaranty and Accident Company, La.App. 2d Cir., 1961, 133 So.2d 858, 862.
From the established facts of this case, viewed in the light of the rules as recited in the pronouncements in the cited cases, the conclusion is inescapable that plaintiff has failed to establish, to a legal certainty and by a reasonable preponderance of the evidence, any of the elements or factors essential to his recovery. The proof is deficient in establishing that plaintiff suffers from a conversion reaction or traumatic neurosis, or, should it be conceded that he is so afflicted, that such affliction has any causal relationship with the accident of March 10, 1958, and, moreover, and finally, that he is disabled to perform work of the same or similar character as he was doing at the time of the accident.
The judgment appealed is therefore affirmed at plaintiff-appellant’s cost.
Affirmed.