SAMUEL, Judge.
This is an action for personal injuries and property damages incurred on August 9, 1962 when plaintiff’s car was struck from the rear by a truck owned by Evans Build *553 ing Products Company and driven by its employee, Joseph W. Antoine. The three defendants are Evans Building, its liability insurer, Aetna Casualty And Surety Company, and Antoine.
After a trial on the merits the district court rendered judgment in favor of plaintiff and against the defendants in the amount of $6,000, with legal interest and costs. On a rule to tax costs the court refused to allow expert witness fees for Dr. Charles Smith, a psychiatrist, and Nathan Lubin, a doctor of psychology, both plaintiff witnesses. Plaintiff has appealed. In this court he seeks: (1) an increase in the amount of the judgment from $6,000 to $48,910; and (2) allowance of expert witness fees to Drs. Smith and Lubin as costs. The defendants have answered the appeal seeking a reduction of the judgment from $6,000 to $2,000. We are thus presented with only two questions, quantum and the allowance or disallowance of witness fees for the two named doctors.
Immediately after the accident plaintiff was seen by Dr. Ellis D. Lindsey, a general practitioner, to whom he complained of having received a neck injury and of discomfort with any movement of the neck. He was examined, x-rayed, given medication for pain and headaches 'and allowed to return home. He returned 4 days later still complaining of tenderness in the neck and Dr. Lindsey recommended he see an orthopedic surgeon.
Plaintiff did not consult an orthopedist immediately. Instead he returned to his usual occupation, which he describes as “first utility man for the captain’s handyman”, on board a vessel owned and operated by the Mississippi Valley Barge Line Company, a position he had held for 6 years. According to plaintiff’s testimony his duties consisted of general housekeeping, minor repairs, painting and loading and unloading groceries and supplies. This trip, which was his next tour of duty after the accident, lasted 42 days. Approximately one month after the trip began he had some difficulty with his neck and for that reason requested and received a day off from his duties. Upon his return he saw an orthopedic specialist, Dr. Blaise Salatich, on October 23, 1962. Subsequently, on November 26, 1962, Dr. Salatich wrote a letter to plaintiff’s employer advising that plaintiff was unable to perform his usual duties because such performance would aggravate his neck condition and that active orthopedic therapy was required for an undetermined period of time. As a result of the letter, or at least following its receipt, plaintiff lost his job and he has made no attempt to return thereto. He later obtained lighter work at a lesser salary with a detective agency.
Plaintiff’s complaints are concerned with his physical and mental condition and he relates both to the whiplash type of injury sustained in the accident. He complains of continued neck pains, severe headaches, inability to do heavy manual labor, restricted movement of the neck, difficulty in bending and leaning down without dizziness, and increased nervousness and irritability with a resulting inability to get along with other people, particularly his wife. He informed Dr. Salatich that he was subject to blacking out as well as dizziness. He did not complain about blacking out to any other doctor. His total claim for damages in this court, $48,910, consists of $100, the insurance deductible portion of his automobile damage, $3,066 for present and future medical expenses (the future medical expenses, $2,500, being solely for psychiatric treatment), $25,744 for present and future loss of wages and $20,000 for physical and mental pain and suffering.
Testimony, other than expert, relative to plaintiff’s physical condition was given by four lay witnesses in addition to himself. These witnesses were his brother, his wife, his wife’s nephew and the office manager of the detective agency where he is now employed. The office manager testified only that plaintiff held his neck differently from other persons and the other three lay witnesses testified that before the accident *554 plaintiff was strong and healthy, a steady worker, and able to do heavy physical labor, but since the accident he has been unable to do strenuous work and has had frequent difficulty with his neck. Plaintiff’s wife further testified he has been more irritable and they have had more arguments since the accident.
The doctors who treated or examined plaintiff and testified on his behalf were Drs. Salatich, Smith and Lubin. The medical experts called by the defendants were Drs. Irving Redler and Irvin Cahen, orthopedists, and Richard Levy, a neurosurgeon. All of the medical testimony on the subject is to the effect that plaintiff, who was 56 years of age at the time of the accident, suffered from an arthritic, degenerative condition of the neck which pre-existed the accident.
Dr. Salatich gave plaintiff 70 treatments and at the time of trial was still giving treatments at the rate of one every two weeks. This doctor testified that after three or four months plaintiff was relatively free of pain but at the time of trial was not completely well, heavy work would not be advisable and he should not return to his usual occupation. He stated that the preexisting arthritic condition of the neck, while not caused by the accident, was aggravated by it.
Dr. Irving Redler examined plaintiff on February 27, 1963. He found plaintiff had a complete range of motion of the head, neck and shoulder region and of the upper extremities and his trunk movements were normal, all without complaint or evidence of disability. This doctor found no objective evidence of any disability at all and no basis for plaintiff’s persistent complaints.
Dr. Richard W. Levy examined plaintiff on June 26, 1963. It was his opinion that the plaintiff had no neurological disabilities attributable to the accident. He testified that dizziness and blacking out are functions of the brain and, in the absence of fracture, do not occur from a neck injury.
Dr. Irvin Cahen examined plaintiff on November 25, 1963 at which time he complained of headaches, stiffness and restricted motion of the head and neck and weakness of his right hand. This doctor was of the opinion that plaintiff’s range of cervical mobility was fairly good as correlated to his age group and osteoarthritic development and the only lack of resiliency was associated with arthritic changes in the neck. He felt that plaintiff was capable of continuing his usual physical activities and no further orthopedic therapy was needed insofar as the injury suffered in the accident was concerned.
While we do not deem the same to be in any way conclusive, we have viewed films which are in evidence and which were taken without plaintiff’s knowledge on February 7, 1963. These films show him in the process of unloading a station wagon and indicate no difficulty whatsoever in stooping or bending while inside the station wagon and'while engaging in some other activities.
As a result of his alleged increased nervousness and irritabilty concerning which plaintiff previously had complained only to Dr. Salatich (he made no such complaint to any of the defendant doctors), he consulted the psychiatrist, Dr. Smith, on three occasions in October and November of 1963. Dr. Smith diagnosed plaintiff’s mental condition as an “anxiety reaction”. Upon the basis of the information he received from the plaintiff and the result of tests made by Dr. Lubin, to whom he referred plaintiff for the purpose of determining whether he was actually suffering pain or was consciously feigning, Dr. Smith was of the opinion that plaintiff’s symptoms as to apprehension and depression had occurred after the accident and were related to the injury he could have received in the accident. He was also of the opinion that plaintiff was subject to anxiety and other emotional problems *555 prior to the accident hut that his outward distress had not been so prominent at that time. It is apparent from this doctor’s report and testimony that he places a great deal of stress on the relationship between plaintiff and plaintiff’s wife. They were separated, or at least discontinued living together, after the accident. Dr. Smith’s report, which was introduced in evidence and is more detailed than was his ¡testimony, states that while the relationship between the husband and wife had not been exemplary before the accident, they had managed to get along in a reasonable fashion and plaintiff felt that he became so difficult after the accident, because of his physical pain and emotional stress, that his wife and daughter removed themselves from the home and went to live with his wife’s mother. We note that in his testimony plaintiff attributes the separation only to financial difficulties resulting from his loss of work following the accident. Dr. Smith recommended further psychiatric treatment for a period of one and a half to two years at an estimated cost, at $25 per hour, of $2,500.
Dr. Nathan Lubin saw the plaintiff on two occasions during the month of October, 1963. He administered various intelligence, emotional and personality tests. He found, in effect, that plaintiff was not consciously malingering and that, insofar as plaintiff himself was concerned, he was actually suffering pain. However, Dr. Lubin stated that, because of his lack of knowledge of plaintiff’s past history, he could not say the accident actually caused plaintiff’s emotional problem. That problem pre-dated the accident and was described by the doctor as an unconscious desire to be hostile toward authority figures, resulting from an unconscious hatred for his father and an increased desire to be dependent upon his wife.
From all of the evidence we conclude that as a result of the accident plaintiff sustained a rotational sprain of the cervical ligaments of a minor or moderate type and that, due to the pre-existing arthritic _ condition, his recovery therefrom was longer, and the pain suffered greater, than would normally be the case. However, recovery was accomplished without hospitalization, traction or the use of a cervical collar. We also conclude, as did the trial court, that plaintiff has failed to carry his burden of proving his emotional problem, the condition Dr. Smith diagnosed as an “anxiety reaction”, was caused or aggravated by the accident. While each case must be decided on its own particular facts and circumstances, the dangers of abuse present in the acceptance of trauma as an initial or aggravating cause of mental and nervous disorders require that the evidence in such cases be scrutinized with extreme care and caution. Phillips v. Underwriters at Lloyd’s of London, La.App., 128 So.2d 318; Corral v. Crawford Homes, Inc., La.App., 113 So.2d 820; Rowan v. Travelers Insurance Company, La.App., 111 So.2d 387; Etienne v. Algernon Blair, Inc., La.App., 100 So.2d 533; Phelps v. Royal Indemnity Company, La.App., 77 So.2d 225; Mouton v. Gulf States Utilities Co., La.App., 69 So.2d 147.
The trial court rendered a lump sum judgment of $6,000 without itemization. As we understand the award, it consists of approximately $3,000 for special damages and $3,000. for pain and suffering. Under the holding of Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, we are of the opinion that the amount awarded does not abuse the discretion vested in the trial court and, accordingly, we will neither increase nor decrease that amount.
We now address ourselves to the question of fees. The trial court refused to tax as costs expert witness fees, otherwise' taxable, for Drs. Smith and Lu-bin for the reason that these witnesses testified only as to plaintiff’s mental condition and plaintiff has failed to sustain the burden of proving a causal connection between that condition and the accident. We are of the opinion that this is not *556 a sufficient reason for disallowing expert witness fees. The fee of an expert should be taxed as costs (under LSA-R.S. 13:3666 which tracts its source, Act 19 of 1884) even though the expert’s opinion was not accepted by the court and even though, on the issue concerning which he testified, the defendant was successful. City of New Orleans v. Salcedo Oil Co., La.App., 94 So.2d 156. We will allow an expert witness fee of $100 for each of the two doctors.
For the reasons assigned, the judgment on the rule to tax costs is amended only insofar as to tax as costs against the defendants expert witness fees of $100 each for Drs. Charles Smith and Nathan Lubin. As thus amended, and in all other respects, the judgment appealed from, i. e., both the judgment on the rule to tax costs and the judgment on the merits, are affirmed; defendants to pay costs of this appeal.
Amended and affirmed.