YARRUT, Judge.
Plaintiff seeks workmen’s compensation for total and permanent disability resulting from an accident on April 4, 1959, while employed by defendant, Kaiser Aluminum and Chemical Corporation, to do heavy manual labor, during which he sustained a bilateral hernia. The accident was promptly reported, and plaintiff referred to his employer’s physician, Dr. William A. Roy, who performed a herniotomy on April 6, 1959. After the usual period of hospitalization and convalescence plaintiff was discharged by Dr. Roy on May 18, 1959, who advised him to return to work. Plaintiff promptly returned to work and attempted his former duties. Due to continual pain in the area of the scars, the lower abdomen and testicles, he returned to Dr. Roy on May 28, 1959, for further treatment. He discontinued work during the early part of June, 1959, and was treated by Dr. Roy until July 14, 1959. Since then plaintiff has sought no further surgical attention.
Plaintiff’s chief complaints are fear of reinjuring himself and pain in the region of the inguinal scars and the testicles, or briefly, traumatic neurosis.
On his own behalf plaintiff was examined by Dr. John DiLeo, general surgeon, and Dr. Arthur Epstein, psychiatrist; and on behalf of defendants, Dr. William Sorum, psychiatrist, and Dr. Dan B. Baker, physician and surgeon, in addition to Dr. Roy.
Drs. Roy, DiLeo and Baker were of the opinion that there was nothing physically wrong with plaintiff, and that he had made a complete and satisfactory recovery from the operation. However, Drs. Roy and Di-Leo noted that plaintiff was a tense and nervous individual, who continued to complain of pain, although there were no objective symptoms. Dr. Roy recommended tranquilizing drugs and psychotherapy, although he did not think plaintiff’s condition resulted from the accident.
As all the physicians and surgeons who examined plaintiff agree that the herni-otomy was successful, and they could find no objective symptoms for plaintiff’s pain, neurosis or anxiety, the issue then devolves on the psychiatric testimony. The only psychiatrist who testified was Dr. Epstein, for plaintiff. Dr. Sorum, psychiatrist for defendants, did not testify, either in court or by deposition. Though he was present in court at the trial, the case was continued on account of the Judge’s illness before he could testify.
Plaintiff contends that the failure of defendant to produce Dr. Sorum, in person or by deposition, must be construed against defendants. Since we are impressed with the testimony of Dr. Epstein, it is unnecessary to consider the failure to produce Dr. Sorum. Defendants, whether rightly or wrongly, were satisfied apparently, with their cross-examination of Dr. Epstein.
The only lay testimony was by plaintiff himself. Plaintiff was 27 years of age at the time of the accident, was happily married and had two children. He was honorably discharged from the Army after four years’ service overseas. After employment on one or two odd-jobs in Mississippi, he obtained employment with defendant, Kaiser Aluminum and Chemical Corporation, and had been at work without mishap or event for nearly two years prior to the accident here. When one of the Company’s physicians, to whom he was referred after the accident, advised that he would have to wear a truss and might *167 never be able to return to work unless he underwent an operation, he promptly consented to the operation. After discharge by the doctor he returned to work under the belief that he would be given light work. He was greatly disappointed at not being given light work, for suffering pain in his inguinal region, and feared a recurrence of the hernia. He returned to the doctor for further treatment and ultimately quit his employment, because a doctor in Mississippi, whose testimony was not taken, advised him that he would be unable to return to hard work for one year. Rather than stay home, plaintiff satisfied an ambition for a college education, and availed himself of the G. I. Bill of Rights by entering Pearl River Mississippi Junior College for a course in agronomy, the Government paying him subsistence of $160 per month, out of which, with odd-jobs on the campus, he had to support himself, his wife and two children. At Kaiser Aluminum he earned $100 per week.
Dr. Epstein qualified as a psychiatrist with Degrees of A.B. and M.D. from Columbia University in 1947. He interned at a New York hospital, with training in neurology and psychiatry, and had three years at Tulane Medical School. He is an associate professor at Tulane Medical School in neurology and psychiatry, a visiting consultant at Charity Plospital, and certified by the American Board of Neurology and Psychiatry. In addition, he is engaged in private practice.
Defendants make much of Dr. Epstein’s suggestion that the termination of this litigation, whether successful or not, might relieve the anxiety of plaintiff. Counsel for defendants argue that this proves plaintiff is suffering from pecuniary greed, rather than from a traumatic psychosis.
The fact that plaintiff promptly submitted himself to a herniotomy and returned to work after discharge by the Company’s doctor, is evidence of his good faith. He could have refused the operation and collected compensation for the full period of 400 weeks. Dr. Epstein was convinced he was sincere, was not a malingerer, and was suffering from traumatic anxiety or psychosis.
The case of Singleton v. W. L, Richardson & Son and Travelers Insurance Corp., 95 So.2d 36, 39, decided by this Court, is a case in point. In that case the only psychiatrist who testified stated he was convinced plaintiff was afflicted with a traumatic neurosis and that the plaintiff was not a malingerer. When questioned whether he thought the neurosis depended on the success or failure of plaintiff’s case, he expressed himself as follows:
“I have not the slightest doubt but that his complaints would improve markedly upon compensation but without it I should say he is crippled for life as far as doing the type of work he originally did when injured.”
The existence of disability may be established by subjective evidence if it is related to an objective condition, and a compensation claimant should not be stigmatized as a malingerer unless the evidence is positive and convincing. Miller v. U. S. Fidelity & Guaranty Co., La.App., 99 So.2d 511.
Under the circumstances, we are constrained to hold that plaintiff at the time of the trial was suffering from traumatic neurosis resulting directly from the accident. In view of the overall evidence here, it would be harsh to deny compensation to this plaintiff, since it would ring down the curtain for good and prevent future inquiry, whereas the awarding of compensation on a temporary basis will permit a future inquiry and revaluation of his condition every six months. Baxter v. Texas & Pacific Railway Co., et al. La.App., 102 So.2d 97.
In view of the foregoing finding, we must hold that plaintiff is totally disabled from doing the work for which he was employed as a result of his injury.
*168 A review of the record convinces us that neither the insured nor its insurer was arbitrary, capricious or acted without probable cause in stopping- the workmen’s compensation payments. The trial judge himself decided that defendants owed no further compensation to the plaintiff. Accordingly, the claim for penalties and attorney’s fees will not be allowed. Callihan v. Fireman’s Fund Indemnity Co., La.App.,, 110 So.2d 758.
The judgment appealed from is reversed and defendants condemned in solido to pay plaintiff workmen’s compensation at the rate of $35 per week, not to exceed 400 weeks, with legal interest on each week’s compensation from due date until paid, less credit for compensation already paid, subject to review as provided by law, together with medical expenses and experts’ fees, defendants to pay costs in both courts.
Reversed and rendered.