CULPEPPER, Judge.
This is a suit for workmen’s compensation. From a judgment awarding plaintiff disability benefits in the sum of $31.20 per week during the period of disability, not to exceed 400 weeks, less a credit for certain payments made, the defendants have taken this appeal. Plaintiff has answered the appeal, seeking an increase in the weekly compensation rate from $31.20 to the maximum rate of $35, and asking that the expert witness fees of plaintiff’s three psychiatrists be increased from $50 to $100 each.
The record discloses that the accident out of which this claim arose occurred on May 26, 1960. The plaintiff, a pulpwood laborer, using a gasoline power saw, was cutting a limb from a fallen tree. As plaintiff cut through this limb, a lower limb, which had been weighted down, was released, throwing the power saw back into plaintiff’s face. Plaintiff’s nose was cut down to the frontal skull, causing a fragmentation fracture and laceration of the left eye lid.
Plaintiff was hospitalized for 3 days, treated for about six weeks longer and then released to return to work on a trial basis. He attempted to work on two consecutive days but complained of dizziness, blurred vision and frontal headaches in the area of the injury. Following this attempt to return to work, plaintiff was examined by several doctors but no satisfactory explanation, on an organic basis, could be found for plaintiff’s complaints. Then, on the request of his attorney, plaintiff was examined by three specialists in the field of psychiatry, Dr. Arthur Blood, Dr. Gene L. Usdin and Dr. Alvin Cohen, all of whom found plaintiff to be disabled by what is commonly called “traumatic neurosis”, causally related to the accident. At the request of counsel for the defendants, plaintiff was examined by two psychiatrists, Dr. Davidson H. Texada, Jr. and Dr. Charles W. Armistead, both of whom opined that although plaintiff was not a malinger he was not suffering from traumatic neurosis.
The central issue in this case is whether plaintiff was disabled by traumatic neurosis. In a very excellent written opinion the trial judge has correctly reviewed and weighed the expert and lay testimony on this issue and we therefore see no necessity for discussing it here. We adopt as our own the conclusions of fact and the application of the law thereto, as set forth in the lower court’s written opinion as follows :
“Drs. Blood, Cohen and Usdin were very definitely of the opinion that the plaintiff is unable to follow his former occupation because of a traumatic neurosis, or psychoneurosis. On the other hand Drs. Armi-stead and Texada are of the opinion that the plaintiff has not developed disabling-traumatic neurosis. However, Dr. Armi-stead admitted that additional psychiatric studies ‘may be in order’. Dr. Texada was of the opinion that the plaintiff was sincere in his complaints, and he thought he may have found an organic basis for plaintiff’s complaints in the form of injury to the nerve twigs at the site of the old injury, and in order to relieve the pain he prescribed Dilantin for the plaintiff. Dilan-tin is described as a drug which is not only used as a relaxant in the case of neurosis, but may be used to relieve the excruciating pain resulting from injuries, to peripheral nerves.
“In view of the fact that none of the doctors who examined the plaintiff were of the opinion that he was malingering, and because of the somewhat negative nature of the conclusions reached by Dr. Armi- *727 stead and Dr. Texada it is my opinion that the medical testimony preponderates in favor of the plaintiff, to the effect that the injuries sustained by him in May, 1960, was the precipitating cause of a traumatic neurosis or psychoneurosis which is incapacitating him. The medical testimony is supported by the lay testimony. While counsel for defendants has assailed with considerable justification the veracity and social responsibilities of the plaintiff, the lay witnesses tendered by plaintiff which include Mary Lee Bush, Thomas DeSha and Edna Joseph all support the history given to the psychiatrists by the plaintiff, which history formed a part of the materials and information on the basis of which the psychiatrists reached their conclusions.
“The Courts of this state have consistently held that a disabling neurosis or psychoneurosis precipitated by trauma may be .a compensable disability. Professor Wex S. Malone summarizes the attitude of the •Courts of this state under the subheading '‘Accident Precipitating Factor in Traumatic Neurosis’ of Section 232, page 66 of his 1960 supplement to his work ‘Louisiana Workmen’s Compensation Law and Practice’ as follows:
“ ‘An accident may serve as a precipitating factor that aggravates a latent mental insecurity or neurosis or •emotional weakness into a totally dis.abling psychoneurosis.
“ ‘This is typical of the so-called “conversion reaction” in which certain •conflicts or attitudes of the individual .are repressed and are converted into .a physical symptom which gives him adequate reason for not doing or facing things which he is hesitant to face •or which he wishes to escape, without his realizing consciously what he is ■doing. In such cases the fact that the physical results of the accident have •disappeared and that a normal individual would have been able to return to work is not a sufficient reason for denying compensation to the victim who is emotionally predisposed to injury.’
“In the case of Whitfield v. Firemen’s Fund Insurance Company, 125 So.2d 165, the Fourth Circuit Court of Appeal allowed recovery for a traumatic neurosis which developed following a successful hernia operation and in that connection said:
“ ‘The existence of disability may be established by subjective evidence if it is related to an objective condition, and a compensation claimant should not be stigmatized as a malingerer unless the evidence is positive and convincing. Miller v. U. S. Fidelity & Guaranty Co., La.App. 99 So.2d 511.’
“In evaluating the evidence of this case I have taken into consideration the admonition expressed by the court in the case of Miller vs. United States Fidelity and Guaranty Company, 99 So.2d 511 as follows:
“ ‘We are fully cognizant of and have striven to take into proper consideration the dangers of abuse that are implicit in the acceptance of mental and nervous disorders and affections as constituting disability within the intent and purpose of our compensation statute. This danger has been voiced numerous times by the courts of this state, and it is accepted as an established principle, that the evidence in cases of this nature should be scrutinized with extreme care and that every precaution should be taken to protect employers and insurers against unjustified claims which lie in the somewhat nebulous realm of mental affections. On the other hand, the contrary danger of denying recovery to a deserving claimant is equally apparent. * * * ’
“The Court in the Miller case cited supra said:
“ ‘The principle of allowing recovery for disability upon the basis of a diagnosis of neurosis or hysteria is now firmly established, beginning in 1925 *728 (insofar as our research indicates) with the holding- of this court in Wilkinson v. Dubach Mill Co., Inc., 2 La. App. 249, and continuing through a now comprehensive list of cases.’
“I have also taken into consideration the following expression in the Miller case cited supra:
“ ‘There can be no question in this case as to the correctness of the conclusion that plaintiff is either suffering from a genuine hysteria or is malingering. The principle that courts will stigmatize a claimant as a malingerer only upon positive and convincing evidence justifying such a conclusion is so well imbedded in our jurisprudence as to preclude the necessity for specific citation.’
"After a carefuly study of both the medical testimony and the lay evidence, including the testimony of the plaintiff himself, and taking into consideration the prior work record of the plaintiff and the nature of the injury he sustained, it is my opinion the plaintiff has sustained the burden of proof required by law, and has established his claim for total and permanent disability.
“The plaintiff apparently has little or no disability resulting from organic lesions and may with suitable therapy improve so that he can resume his former occupation. Because of this possibility, I am constrained to point out the observation of the Court in the recent case of Ladner v. Higgins [La.App.], 71 So.2d 242, in which it was said:
“ ‘We are fully cognizant of the caution which we must exercise in a case of this nature, in view of the nebulous characteristics of a neurosis, however, if plaintiff’s condition should improve in the future, the defendants may avail themselves of the provisions of the workmen’s compensation law, . which affords them the right to reopen the. case after a lapse of six months. Jones v. Atlantic and Gulf Stevedores, La.App. 1949, 30 [38] So.2d 635 [653]; Dixon v. T. J. Moss Tie Company, La.App. 70 So.2d 763’ ”
In this court the defendants’ principal argument is that the plaintiff, a 29 year old colored man, is not worthy of belief because he has maintained an adulterous relationship for a number of years, because he has been in jail on two or three occasions for drinking and fighting and because his statements to the phychiatrists, as to certain minor details not relevant to the central issue of disability, have been contradicted. Our answer to this contention is that the trial judge, who saw and heard the lay witnesses, did not find plaintiff unworthy of belief nor did he find that plaintiff had made any false statements to the psychiatrists influencing their diagnosis.
As to the weekly compensation rate, the record shows that the plaintiff and his follow worker, Thomas DeSha, testified vaguely that plaintiff earned $9 a day when he was “limbing” and $10 a day when he was “limbing and hauling”. However, plaintiff’s employer, Mr. James Mitchell, testified positively that plaintiff was being paid $1 per hour and that he usually worked 8 hours a day. The trial court obviously accepted the testimony of Mr. Mitchell that plaintiff’s average daily wage was $8, which figure the lower court used in calculating plaintiff’s weekly wage of $48, based on a six day week. In fixing the weekly compensation rate at $31.20-the trial judge correctly applied the law as set forth in Carrington v. Consolidated Underwriters, 230 La. 939, 89 So.2d 399.
As to plaintiff’s contention that the expert witness fees of his three psychiatrists should be raised from $50 to $100 each, there is no evidence in the record, nor any other basis, on which we can find the trial judge manifestly erroneous.
*729 For the reasons assigned the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendants.
Affirmed.